<i>Decree affirmed with costs of<br>this appeal.</i>

---

HRISANTHY J. PAPADINIS *vs.* CITY OF SOMERVILLE & another (and a companion case[1]).

Middlesex. May 4, 5, September 14, 1954. — September 21, 1954.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Redevelopment of Land. Constitutional Law,* Public purpose, Eminent domain, Redevelopment of land, Privileges or immunities of citizens. *Eminent Domain,* Purpose of taking.

Part IV of the housing authority law, G. L. (Ter. Ed.) c. 121, §§ 26JJ to 26MM, as appearing in St. 1946, c. 574, § 1, and as amended by St. 1953, c. 647, §§ 18, 19, in providing for taking by eminent domain and redevelopment of "sub-standard" and "decadent" areas, has as its primary object the public purpose of slum clearance, to which subsequent sale of the cleared lands to private persons is merely incidental, and is not unconstitutional as authorizing exercise of the power of eminent domain and expenditure of public funds for private purposes. [631–632]

A provision of the Massachusetts housing authority law empowering a

---

[1] The companion case is by Lawrence Ardito and others against the same defendants.

housing authority to impose restrictions against residential use of an area sold or leased by it for redevelopment after finding the area to be "sub-standard" and "decadent" within the meaning of that law and after acquiring it for the purpose of slum clearance and accomplishing that purpose, is not unreasonable or in violation of the Fourteenth Amendment to the Federal Constitution as abridging the privileges of citizens. [633–634]

BILL IN EQUITY and PETITION, filed in the Superior Court on March 12, 1954, against the city of Somerville and Somerville Housing Authority.

The cases were reported by *Kirk, J.*

*Irving L. Stackpole,* for the plaintiffs.

*Lewis H. Weinstein,* (*George S. Ryan,* City Solicitor, *Amleto M. DiGiusto & Lawrence A. Sullivan* with him,) for the defendants.

*John A. Daly,* by leave of court, submitted a brief as amicus curiae.

SPALDING, J. These two cases, which were heard together, present the question of the constitutionality of portions of Part IV (entitled "Land Assembly and Redevelopment Projects") of the housing authority law. G. L. (Ter. Ed.) c. 121, §§ 26JJ to 26MM, as appearing in St. 1946, c. 574, § 1, and as amended by St. 1953, c. 647, §§ 18, 19. In one, the plaintiff Papadinis under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, seeks a declaratory decree as to the right of the defendant Somerville Housing Authority, hereinafter called the authority, to take his land by eminent domain. The case was heard on a statement of agreed facts and the judge without decision reported the case. The other case is brought by fifteen taxpayers of the defendant city under G. L. (Ter. Ed.) c. 40, § 53, and seeks to restrain the city from expending public funds under a "coöperation agreement" which the city has entered into with the authority in connection with a proposed slum clearance project. The defendants demurred and the judge after entering an interlocutory decree sustaining the demurrer reported the case. G. L. (Ter. Ed.) c. 214, § 30.

The facts agreed upon in the *Papadinis* case and those admitted by demurrer in the taxpayers' suit are substan-

tially the same. Both cases arise out of a slum clearance project in the Linwood-Joy area, so called, in the city of Somerville. In the *Papadinis* case the plaintiff challenges the constitutionality of the statute on the ground that it authorizes the exercise of the power of eminent domain for a nonpublic purpose. The basis for the attack in the taxpayers' suit is that the statute sanctions the expenditure of public funds for private purposes. The question presented by each case is basically the same, namely, whether the proposed project can be classed as a public use or service. If it cannot be, then under our Constitution there can be no exercise of either the power of eminent domain or the taxing power. *Lowell* v. *Boston*, 111 Mass. 454, 462. *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 292, and cases cited.

Section 26JJ, as amended, of Part IV of the housing authority law, after stating that substandard, decadent or blighted open areas exist in certain cities and towns of the Commonwealth and that such areas constitute a serious threat to the safety, health, morals and welfare[1] of the residents of the Commonwealth, then declares that "[T]he redevelopment of land not only in sub-standard areas but also in decadent and blighted open areas in accordance with a comprehensive plan to promote the sound growth of the community is necessary in order to achieve permanent and comprehensive elimination of existing slums and substandard conditions and to prevent the recurrence of such slums or conditions or their development in other parts of the community or in other communities; and that the redevelopment of blighted open areas promotes the clearance

---

[1] In amplification of this declaration the statute declares that the existence of these areas "contributes substantially to the spread of disease and crime (necessitating excessive and disproportionate expenditure of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, punishment, and the treatment of juvenile delinquency and for the maintenance of adequate police, fire and accident protection and other public services and facilities), constitutes an economic and social liability, substantially impairs or arrests the sound growth of cities and towns . . . retards the provision of housing accommodations . . . [and] decreases the value of private investments and threatens the sources of public revenue and the financial stability of communities."

of sub-standard and decadent areas and prevents their creation and occurrence; that the menace of such sub-standard, decadent or blighted open areas is beyond remedy and control solely by regulatory process in the exercise of the police power and cannot be dealt with effectively by the ordinary operations of private enterprise without the aids herein provided . . . [and] that a public exigency exists which makes the acquisition, planning, clearance, rehabilitation or rebuilding of such sub-standard and decadent areas for residential, governmental, recreational, business, commercial, industrial or other purposes . . . public uses and benefits for which private property may be acquired by eminent domain or regulated by wholesome and reasonable orders, laws and directions and for which public funds may be expended for the good and welfare of this commonwealth . . . ."

The authority established under § 26K, as amended, of the housing authority law for the purpose, among other things, of clearing "sub-standard, decadent or blighted open areas" has found that the Linwood-Joy area was "sub-standard" and "decadent" within the meaning of § 26J.[1] These findings, which are not challenged, are supported by elaborate subsidiary findings which show the area to be that of a typical slum. See *Stockus* v. *Boston Housing Authority*, 304 Mass. 507, 509–512. It also appears that the authority has done all things necessary under the provisions of § 26KK, as amended, for the approval of a plan,

---

[1] A "Sub-standard area" is defined as "any area wherein dwellings predominate which, by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation, light or sanitation facilities, or any combination of these factors, are detrimental to safety, health or morals" (§ 26J, as appearing in St. 1946, c. 574, § 1). A "Decadent area" is "any area which is detrimental to safety, health, morals, or welfare because of the existence of buildings which are out of repair, physically deteriorated, unfit for human habitation, or obsolete, or in need of major maintenance or repair, or because much of the real estate in recent years has been sold or taken for non-payment of taxes or upon foreclosure of mortgages, or because many buildings have been torn down and not replaced and in which under existing conditions it is improbable that the buildings will be replaced, or because of a substantial change in business or economic conditions, or because of inadequate light, air, or open space or excessive land coverage; or by reason of any combination of any of the foregoing conditions" (§ 26J, as amended by St. 1953, c. 647, § 11).

hereinafter called the redevelopment plan, for the Linwood-Joy area, and that such plan has been approved in accordance with those provisions. Under the plan the authority is to take all land within the area by eminent domain and thereafter it is to be sold to private parties for redevelopment for private industrial uses. An agreement has been entered into between the city and the authority whereby the authority has agreed to undertake the redevelopment plan and the city has agreed to pay not less than one third of the cost thereof. The balance is to be paid for by grants obtained from the United States under Title 1 of the Federal housing act of 1949, 63 U. S. Sts. at Large, 414; U. S. C. (1952 ed.) Title 42, § 1451 et seq.

The plaintiffs properly do not assail the statute on the ground that slum clearance is not a public purpose. If that were the only question involved the case would be governed by *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288. In that case, which involved other provisions of the housing authority law, it was held, after full discussion, that slum clearance was a public purpose for which public funds could be expended. And it was further held that the building of low rent housing units in conjunction with a slum clearance project was a means for the attainment of the primary objective, slum clearance, and was likewise a public purpose. The vice of the statute under consideration, according to the plaintiffs, is that it authorizes the exercise of the eminent domain power and the expenditure of public funds for the acquisition of land which will be sold to private persons. It is true that the redevelopment plan contemplates that after the area is cleared the land will be sold to private persons, and that this course is sanctioned by the statute. § 26LL. This is the only material respect in which the statute under consideration differs from that in the *Allydonn* case. It is argued, however, that this difference is sufficient to invalidate the statute because it permits the power of eminent domain to be used for private purposes. We do not agree. Of course, that the power cannot be so used is too well

settled to require citation of authority. But the plaintiffs'
argument, we think, puts the cart before the horse. The
plan here, properly interpreted, does not have for its pri-
mary objective the taking of the property of one individual
and turning it over to another, so that slum clearance can
be said to be merely incidental to that objective. On the
contrary, we are of opinion that the main purpose of the
plan is slum clearance and that the disposition of the land
by sale thereafter is incidental to that purpose. Once the
public purpose contemplated by the statute has been
achieved the authority is not obliged to retain the cleared
land as unproductive property. *Dingley* v. *Boston,* 100
Mass. 544. *Moore* v. *Sanford,* 151 Mass. 285. *Wright* v.
*Walcott,* 238 Mass. 432, 436–437.

In *Dingley* v. *Boston* it was held that land taken in fee
by the city of Boston by eminent domain for the purpose
of correcting a defective drainage condition which had be-
come a public nuisance was a public use notwithstanding
the fact that on completion of the work the nuisance would
be abated and the property might then be occupied by pri-
vate persons. The case of *Moore* v. *Sanford* involved the
constitutionality of a statute which authorized the taking
by the Commonwealth of certain lands and flats for the
improvement of Boston Harbor, and for furnishing better
accommodations for the railroad and commercial interests
of the city. The statute contemplated that portions of the
land taken, when improved, would be sold to private persons
for commercial purposes. It was contended that the statute
was unconstitutional because it authorized the taking of
property for private purposes. The court held that the
property was taken primarily for a public purpose and the
fact that after this purpose was accomplished the Common-
wealth expected to sell some of the property to advantage
did not invalidate the statute. "If lands are taken for a
public use and for the benefit of the community, it is not of
importance that individuals, or, as in this case, the Com-
monwealth, may derive incidental advantage therefrom"
(151 Mass. 285, 290). "Stating the proposition broadly, the

taking in fee of private lands for a public use, the achievement of the aim contemplated . . . and the subsequent sale of the land so taken for private improvement is a recognized and valid exercise of the power of the General Court." *Wright* v. *Walcott*, 238 Mass. 432, 436–437. The great weight of authority has upheld the constitutionality of slum clearance and redevelopment statutes against attack similar to that made here.[1] Indeed, in only two jurisdictions (Florida and Georgia) has the attack been successful. *Adams* v. *Housing Authority of Daytona Beach*, 60 So. (2d) 663 (Fla.). *Housing Authority of Atlanta* v. *Johnson*, 209 Ga. 560.

The further contention in the brief of an amicus curiae that the statute violates the Fourteenth Amendment to the Federal Constitution need not detain us long. In essence the argument is that § 26LL of the statute empowers housing authorities to impose restrictions which might preclude residential use of a cleared slum area which is sold or leased for redevelopment.[2] Hence, it is said, this would prevent persons from living where they choose and would abridge their rights and privileges as citizens. We are of opinion that the point is without merit. We are not disposed to interpret the Fourteenth Amendment as forbidding a State from adopting measures in connection with slum clearance legislation which will prevent or render less likely the reëmergence of slum conditions in the cleared area. The Legis-

---

[1] *Schneider* v. *District of Columbia*, 117 Fed. Sup. 705, 715–719. *Opinion of the Justices*, 254 Ala. 343. *Rowe* v. *Housing Authority of Little Rock*, 220 Ark. 698. *Redevelopment Agency of the City & County of San Francisco* v. *Hayes*, 122 Cal. App. (2d) 777. *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135. *Chicago Land Clearance Commission* v. *White*, 411 Ill. 310. *Crommett* v. *Portland*, 150 Maine, 217. *Herzinger* v. *Mayor & City Council of Baltimore*, 203 Md. 49. *In re Slum Clearance*, 331 Mich. 714. *Velishka* v. *Nashua*, 99 N. H. 161. *State* v. *Rich*, 159 Ohio St. 13. *Foeller* v. *Housing Authority of Portland*, 198 Ore. 205. *Belovsky* v. *Redevelopment Authority of Philadelphia*, 357 Pa. 329. *Ajootian* v. *Providence Redevelopment Agency of Providence*, 80 R. I. 73. *Nashville Housing Authority* v. *Nashville*, 192 Tenn. 103. *Hunter* v. *Norfolk Redevelopment & Housing Authority*, 195 Va. 326.

[2] Section 26LL of the Massachusetts housing authority law provides that if the authority sells or leases land acquired for slum clearance "the terms of such sales or leases shall obligate the purchasers or lessees . . . to devote the land to the use specified in the redevelopment plan for said land." The power granted under this provision was in fact exercised, for the plan called for restrictions against residential use for a period of thirty years.

lature might well have concluded that this could best be accomplished if the area when cleared was devoted thereafter to nonresidential uses. We cannot say that this is unreasonable.

It is to be noted that the project here involved was found by the authority to be a "decadent" and "substandard" area as defined by the statute and in upholding the statute we do so only in so far as it applies to a redevelopment of such areas. Whether the statute would be constitutional as applied to the redevelopment of a "blighted open area" is a question not before us and we make no intimation one way or the other.[1] See *Schneider* v. *District of Columbia,* 117 Fed. Sup. 705, 719–725. Compare *Redevelopment Agency of the City & County of San Francisco* v. *Hayes,* 122 Cal. App. (2d) 777, 790–798.

It follows that in the *Papadinis* case a decree is to be entered declaring that the housing authority has a right to take the plaintiff's property by eminent domain. In the taxpayers' case the interlocutory decree sustaining the demurrer is affirmed.

*So ordered.*

---

[1] "Blighted open area" is defined as "any predominantly open area which is detrimental to safety, health, morals or welfare because it is unduly costly to develop it soundly through the ordinary operations of private enterprise and which is to be developed for predominantly residential purposes by reason of the existence of physical conditions including, but not by way of limitation, the presence of ledge or rock, the existence of unsuitable soil conditions, the necessity of unduly expensive excavation, fill or grading or of the construction of unduly expensive retaining walls, or the necessity of undertaking unduly expensive measures for the waterproofing of buildings or for the drainage of the area or for the prevention of the flooding thereof or for making the same appropriate for sound development; or by reason of obsolete, inappropriate or otherwise faulty platting or subdivision, deterioration of site improvements or facilities, diversity of ownership of plots, inadequacy of transportation facilities or other utilities; or by reason of a substantial change in business or economic conditions or practices, or tax and special assessment delinquencies; or by reason of any combination of any of the foregoing conditions, and which substantially impairs the sound growth of the community" (§ 26J, as amended by St. 1953, c. 647, § 12).