DESPATCHERS' CAFE INC. & another *vs.* SOMERVILLE HOUSING AUTHORITY & another.

Middlesex. November 1, 1954. — February 14, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Redevelopment of Land. Eminent Domain,* Motive for taking. *Public Officer. Motive. Equity Jurisdiction,* Eminent domain.

A demurrer properly was sustained to a bill in equity by property owners against a city and its housing authority to enjoin the defendants from taking the plaintiffs' properties by eminent domain under the Massachusetts land redevelopment law for the stated purposes of clearing an area found under that law to be substandard and decadent and of redeveloping it for light industry exclusively, where the plaintiffs sought to attack the proposed action of the defendants solely on the alleged ground that the defendants in exercising their authorized powers were really impelled by a motive to attract industries and improve the financial situation of the city by changing the character of the area rather than to effect a slum clearance.

BILL IN EQUITY, filed in the Superior Court on April 5, 1954.

The suit was heard by *O'Connell*, J., on demurrer.

*John A. Daly*, for the plaintiffs.

*Lewis H. Weinstein*, (*George S. Ryan*, City Solicitor, & *Amleto M. DiGiusto* with him,) for the defendants.

QUA, C.J.  This is a suit in equity by the plaintiff Despatchers' Cafe Inc. as the holder of a lease of a store building, and by the plaintiff Lippis as the owner of residence property, both located in the Linwood-Joy area, so called, in Somerville.  The purpose of the bill is to enjoin the defendant Somerville Housing Authority and the defendant city of Somerville from taking any steps or proceedings to acquire the properties of the plaintiffs by eminent domain. In the Superior Court an interlocutory decree was entered sustaining the defendants' demurrer, and the case was reported upon the bill and demurrer.

The bill alleges that the defendant Somerville Housing Authority has developed a program for dealing with the area in which the plaintiffs' properties are located called "Land Assembly and Redevelopment Plan for Linwood-Joy Project Area," according to which the land in the area, now largely a thickly settled residential district, is to be taken by eminent domain under G. L. (Ter. Ed.) c. 121, §§ 26JJ to 26MM, inserted by St. 1946, c. 574, § 1, as appearing as to §§ 26JJ and 26KK in St. 1953, c. 647, § 18, and as amended in § 26MM by St. 1953, c. 647, § 19.  After the taking the land is to be cleared, and the streets are to be relocated, after which the land is to be offered for sale to private owners in parcels for use and development for light industry only. Residential use is to be forbidden.  The defendant city of Somerville, through its mayor and board of aldermen, has approved the plan, and the Somerville Housing Authority and the city have entered into an agreement whereby the city has undertaken to meet one third of the cost of the project.

Incorporated in the bill by reference are copies of the plan and of various documents, reports, and resolutions connected

therewith. These are much too elaborate to be summarized here. They disclose a detailed and careful study, including much statistical matter as to the area, its present condition, and its future possibilities. They include findings by the housing authority that the area is a "sub-standard area" and a "decadent area," both as defined in G. L. (Ter. Ed.) c. 121, § 26J, as appearing in St. 1946, c. 574, § 1, and as amended. These findings are supported by many detailed subsidiary findings plainly sufficient to support the general findings. In *Papadinis* v. *Somerville*, 331 Mass. 627, at page 630, we said that these findings "show the area to be that of a typical slum." The bill further alleges that the Somerville planning board and the State housing board have made findings required by § 26KK; that the State housing board has further found that the area is substandard and decadent; and that it has authorized the Somerville Housing Authority to make an agreement for a loan and grant with an agency of the Federal government. Originally the bill alleged that the statute under which the housing authority is proceeding, §§ 26JJ to 26MM, is unconstitutional, but the plaintiffs have now abandoned this position in view of the decision to the contrary in *Papadinis* v. *Somerville*, 331 Mass. 627. In accord with our own decision is *Berman* v. *Parker*, 348 U. S. 26.

The bill contains allegations that the area is not substandard or decadent and "could not be so found by any person exercising sound and rational judgment not motivated by other considerations," and there are some allegations to the effect that some of the findings of the housing authority are not true. It must be regarded as settled by *Stockus* v. *Boston Housing Authority*, 304 Mass. 507, 509–512, that a good bill cannot be constructed upon mere denials of the truth of findings made by the administrative board whose duty it is to make them. It is not for the court to take over the functions of the board. *M. Doyle & Co. Inc.* v. *Commissioner of Public Works of Boston*, 328 Mass. 269, 271–272, and cases cited. If there is any room for the exercise of discretion the judgment of the board must prevail. *Lynch* v.

*Forbes,* 161 Mass. 302, 308–309. *Broderick* v. *Department of Mental Diseases,* 263 Mass. 124, 128. *Burke* v. *Metropolitan District Commission,* 262 Mass. 70, 74–75.

We do not understand the plaintiffs to dispute this. We understand that their reliance is upon further allegations that "In fact the defendants in reaching their opinion and in acting thereon that the area is substandard and decadent were actuated by improper and illegal motives, namely, the desire to change the area from one predominantly residential to one exclusively industrial, in order to increase taxable real estate and personal property valuations and to compete with other municipalities in the attraction of new industrial enterprises," and that the "desire to create a new industrial area is the determining factor and the actual motivating cause of the program to be undertaken by the two defendants." To let the plaintiffs themselves state their present position, they say in their brief that their cause for relief in equity is "arbitrary conduct of the defendants in determining to take the plaintiffs' real estate, based on the illegal and improper motive of benefiting the defendant city of Somerville financially by increasing its tax revenues," and again, after conceding that there might be differences of opinion as to whether the area is a slum, they say, "We prefer to rest our objection to the seizure of the plaintiffs' property on the proposition that the motive for the seizure is not in fact to clear a slum but to increase the taxes received by the city on the one hand and reduce its operating costs on the other." In other words, in so far as the plaintiffs' bill may be construed as alleging that the conduct of the defendants was arbitrary the plaintiffs mean that it was arbitrary not because of what the defendants did and propose to do but because of their motive in doing it.

The housing authority of Somerville is entrusted with the responsibility in proper instances of eliminating substandard and decadent areas as defined in the statute. The area here in question must be taken to be such an area. The authority is given power after clearing such an area to see that when the land is sold or leased it shall be devoted to

the use specified in the plan.  § 26LL.  It is here acting within the scope of its powers.  There is nothing in the resolutions or findings of the authority to show that it has any motive other than the performance of its public duty. There are some references to financial advantages to the city that might be expected from the project, but these fall far short of indicating that the dominant purpose was other than to eliminate a substandard and decadent area by clearing it and then putting it to the best available use.  In determining whether the project was one that ought to be undertaken it would seem proper to give some consideration to the economic effects upon the city which was expected to pay one third of the cost.

Apparently the plaintiffs expect to show by oral evidence that the authority's motives are not what they purport to be.  Presumably they intend to put the members of the authority on the stand and to cross-examine them as to their motives.  If the plaintiffs can do that in this case, any person whose land is about to be taken for a public purpose can do the same.  If land is about to be taken for a schoolhouse, the owner can bring suit claiming that the motive of the authorities for the proposed taking is not really that a schoolhouse is needed, but is to improve the appearance of the street, to advertise the community, to give jobs to contractors and workmen, to make themselves popular with the parents of the children, or is whatever other motive ingenuity and the plausibilities of the situation may suggest.  To permit this would be seriously to hamper public officers in the performance of duties necessary to the public welfare.  It is perhaps possible to imagine a case where the authorities ostensibly taking land for a schoolhouse have no intention of building any schoolhouse at all but are really taking the land to let it lie open for the benefit of adjoining land owned by themselves or for some other irrelevant purpose.  See *Sellors* v. *Concord*, 329 Mass. 259, 262.  It will be time enough to deal with such a case when it arises.  There is nothing of that kind here.  There is no allegation that the defendants do not intend to carry out the project for which

the land is to be taken. Any malicious or dishonest motive on the part of the defendants is expressly disclaimed.

In our opinion such a bill as this, attacking merely the impelling motives of officers authorized to exercise the power of eminent domain and actually exercising that power for authorized purposes, cannot be maintained. No case has been cited which goes as far as we are here asked to go. The recent decision of the Court of Appeals of New York in *Kaskel* v. *Impellitteri*, 306 N. Y. 73, a case very similar to this, is in accord with our views. And see *Kelley* v. *School Committee of Watertown*, 330 Mass. 150, 153–154; *Morgan* v. *Banas*, 331 Mass. 694. Compare *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 541.

The interlocutory decree sustaining the demurrer is affirmed, and a final decree is to be entered dismissing the bill.

*So ordered.*