OPINION OF THE JUSTICES TO THE HOUSE OF
REPRESENTATIVES.

*Urban Redevelopment Corporation. Taxation,* Real estate tax: exemption;
Personal property tax: exemption. *Constitutional Law,* Taxation,
Redevelopment of land, Public purpose. *Corporation,* Urban rede-
velopment corporation. *Redevelopment of Land.*

The redevelopment of a "blighted open area" as defined in the urban
redevelopment corporation law, G. L. (Ter. Ed.) c. 121A, as amended,
is a public purpose. [763]
Urban redevelopment corporations established under G. L. (Ter. Ed.)
c. 121A, as amended, as corporations constituting "instrumentalities
of" the Commonwealth "organized to serve a public purpose," having
the power of eminent domain, and subjected to certain control by
public authorities, although governed in many respects by the laws
governing business corporations in general and having stockholders
who may receive limited dividends, may constitutionally be accorded
favored treatment in the taxation of their property, irrespective of the
particular section of c. 121A under which land is acquired by them
and whether, prior to its acquisition, it was a "sub-standard area,"
a "decadent area" or a "blighted open area." [763–764]

On July 2, 1956, the Justices submitted the following
answers to questions propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts.

The Justices of the Supreme Judicial Court respectfully
submit these answers to questions set forth in an order of
the House dated June 6, 1956, and transmitted to us on
June 11.

The questions relate to a pending bill which would re-
draft c. 121A, § 10, of the Tercentenary Edition of the
General Laws as originally enacted by St. 1945, c. 654, § 1,
and as previously amended by St. 1953, c. 647, § 3, provid-
ing for the taxation of urban redevelopment corporations.

The questions are as follows:

"1. Is it within the competency of the General Court under Article IV of section one of chapter one of the Constitution of Massachusetts to enact a law exempting urban redevelopment corporations and their property, including certain leased property, from taxation, betterments and special assessments for a period of forty years after their organization, and providing that during said period such corporations shall pay no tax, excise or assessment, except a corporate excise and certain other excises, all as provided in section four of said House, No. 2879.

"2. Would the answer to question 1 be the same whether the corporation acquired the land for its project: (a) as provided in section 11 of chapter 121A, before the land had been acquired, assembled or cleared for redevelopment purposes by any other agency; or (b) from a housing authority, a redevelopment authority, a city or town, or a corporation wholly owned or controlled by a city or town, as provided in section 7A, or section 14, of chapter 121A, after the land had been acquired for redevelopment purposes by such authority, city or town, or corporation?

"3. Would the answer to questions 1 and 2 be the same whether the site of the urban redevelopment corporation's project had been, prior to being acquired for redevelopment purposes by the corporation or a housing or redevelopment authority or other public agency: (a) a Sub-standard Area; (b) a Decadent Area; or (c) a Blighted Open Area, as said terms are defined in section 1 of chapter 121A?"

The proposed redraft of § 10 is long and complicated and need not be quoted or fully summarized here. It is enough to state that the proposed section, which in many respects is like the present § 10, exempts, with some exceptions, the real and tangible personal property of urban redevelopment corporations from ordinary property taxes and imposes upon them excise taxes payable to the Commonwealth and dis-

tributable to the municipalities in which the property is located. It may be assumed that these corporations derive some tax advantages from the excise as compared with ordinary local taxation, and that these advantages could not be allowed to ordinary business corporations under art. 10 of the Declaration of Rights and c. 1, § 1, art. 4, of the Constitution.

But an urban redevelopment corporation is not an ordinary business corporation. Such corporations are formed under and are regulated by G. L. (Ter. Ed.) c. 121A, originally inserted by St. 1945, c. 654, § 1, and subsequently amended. Although they may be formed by three or more individuals and in many respects are governed by the laws governing business corporations in general (§ 3, as appearing in St. 1953, c. 647, § 1) and although they have stockholders (§ 7, as amended by St. 1947, c. 487, § 1), who may receive dividends, limited to six per cent (§ 9), their activities are strictly confined to the undertaking and carrying out of projects authorized by the housing board (§ 3) and approved by the local planning boards and the mayors or selectmen (§ 6, as amended by St. 1953, c. 647, § 2) for the construction and maintenance of decent, safe, and sanitary dwellings upon substandard, decadent or blighted open areas which have been acquired or cleared in accordance either with the housing authority law or with c. 121A itself (§ 3, § 1, as most recently amended by St. 1954, c. 73, §§ 1, 2). Such corporations must act under rules and regulations of the State board of housing (§ 4). They may take land by eminent domain for approved projects (§ 11). They are subject in many respects to the control of public authorities. They are declared to be "instrumentalities of the commonwealth" (§ 3). "Every such corporation shall be deemed to have been organized to serve a public purpose, and shall remain at all times subject to reasonable rules and regulations of the housing board. All real estate acquired by any such corporation and all structures erected by it shall be deemed to be acquired or erected for the purpose of promoting the public health, safety and welfare . . ." (§ 8).

It will be observed that the purposes for which urban redevelopment corporations are formed and which they are bound to carry out were classed by this court as public purposes in *Papadinis* v. *Somerville*, 331 Mass. 627, except that we reserved judgment with respect to a "blighted open area" for the reason that no such area was involved in that case, and there had been some conflict of authority with respect to such an area. 331 Mass. at page 634. But since the questions here presented may involve a "blighted open area" as defined in c. 121A, § 1, as appearing in St. 1953, c. 647, § 1, we now express the opinion that the redevelopment of such an area as provided in c. 121A is a public purpose similar to and to be classed with the other purposes for which urban redevelopment corporations may be formed. *Berman* v. *Parker*, 348 U. S. 26. It does not seem necessary to repeat or to paraphrase the statutory definition of a "blighted open area." It is copied in a footnote to *Papadinis* v. *Somerville*, 331 Mass. 627, at page 634. See in general *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288.

Since we are of opinion that urban redevelopment corporations, although in a sense private corporations, perform functions for the public benefit analogous to those performed by various other types of corporations commonly called public service corporations, property owned by them and used in such service may receive favored treatment in the matter of taxation. There are many authorities tending in that direction. *Worcester* v. *Western Railroad*, 4 Met. 564. *Worcester County* v. *Mayor & Aldermen of Worcester*, 116 Mass. 193. *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491. *County of Middlesex* v. *Waltham*, 278 Mass. 514. *Assessors of Quincy* v. *Cunningham Foundation*, 305 Mass. 411, 417. *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378, 381–382, and cases cited. *Assessors of Boston* v. *Boston Elevated Railway*, 320 Mass. 588, 591. *Opinion of the Justices*, 324 Mass. 724, 731.

The situation here presented is readily distinguishable from that dealt with in *Opinion of the Justices*, 332 Mass.

769. In that instance, although the proposed plan had some public aspects, the dominating purpose was resale to private interests to which some of the tax advantages were to be extended. The elimination of slums or blighted areas was not the primary object of the proposed statute. In the present instance the tax advantages are to continue only so long, not exceeding forty years, as the project continues to be operated under public regulation and for the public benefit.

As to questions 2 and 3, we think it immaterial under what section of c. 121A the land was acquired or whether the site, prior to its acquisition, had been a substandard area, a decadent area, or a blighted open area.

To each of the three questions we answer "Yes."

STANLEY E. QUA.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, JR.
ARTHUR E. WHITTEMORE.