CHARLES W. BOWKER, Junior, & others *vs.* CITY OF
WORCESTER & another.

Worcester.    April 4, 1956. — July 17, 1956.

Present: QUA, C.J., WILKINS, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Redevelopment of Land.    Constitutional Law,* Redevelopment of land.
*Administrative Matter.    Evidence,* Competency, Of action by public
board.    *Motive.    State Housing Board.    Equity Jurisdiction,* Change in
situation during suit.    *Equity Pleading and Practice,* Plea, Injunction.

The land redevelopment law is constitutional.    [429]
A project undertaken by a housing authority under the land redevelop-
ment law for the demonstrated dominant purpose of slum clearance
was not open to attack on the alleged ground that the authority was
really impelled by another motive.    [430]
Action by a housing authority could be proved only by the records kept
by it as required by G. L. (Ter. Ed.) c. 121, § 26U, as appearing in
St. 1946, c. 574, § 1.    [430]
Under § 26KK of the land redevelopment law, the State Housing Board
can only approve or disapprove a project initiated by a housing
authority.    [430–431]
A relocation plan adopted by a housing authority in connection with a
project undertaken under the land redevelopment law was not invalid
merely by reason of a proposed inquiry as to the color of persons to be
relocated which was included in the plan originally by inadvertence
and was promptly withdrawn upon being brought to the attention of
the authority.    [431]
It was not improper for a housing authority, in a project undertaken under
the land redevelopment law, to allow the proprietor of a plant located
in the area taken to remain in possession of the plant for a longer
time than that allowed respecting other properties in the area.    [431]
The provisions of the subdivision control law, G. L. (Ter. Ed.) c. 41,
§§ 81K–81GG, inserted by St. 1953, c. 674, § 7, are not applicable to
the taking of the action required of a planning board by § 26KK of
the land redevelopment law in connection with a project initiated by a
housing authority under the land redevelopment law.    [431–432]
It was immaterial that, at the time the State Housing Board held a hear-
ing with respect to a project initiated by a housing authority under
the land redevelopment law, the board did not have before it the
findings of the local planning board concerning the project.    [432]
The provision of § 26KK of the land redevelopment law that the State
Housing Board "shall hold a public hearing upon . . . [a project

proposed thereunder], if requested in writing to so do, within ten days after the submission of the project, by the housing authority" or others designated means that the hearing must be requested within the ten days, not that it must be held within that time. [432]

By reason of G. L. (Ter. Ed.) c. 6, § 64, inserted by St. 1948, c. 260, § 3, as amended, action taken in behalf of the State Housing Board by its chairman alone in conducting a hearing on a project submitted under the land redevelopment law and in approving the project was valid. [433]

An agreement by a city to coöperate in a project under the land redevelopment law by contributing a portion of the cost of the project was not invalid in that it was entered into prior to required action by the city's planning board and the State Housing Board in connection with the project. [433]

In a suit in equity by taxable inhabitants of a city under G. L. (Ter. Ed.) c. 40, § 53, to enjoin the city from coöperating financially in a project initiated under the land redevelopment law, it was proper to show in support of the validity of the project, and for the court to find as a fact, the taking of certain necessary action by public authorities although it was taken after the commencement of the suit. [433]

Findings made by a housing authority, the local planning board and the State Housing Board in support of a project initiated under the land redevelopment law cannot be retried in the courts. [434]

Respecting a project initiated under the land redevelopment law, the requirement of the United States housing act, U. S. C. (1952 ed.) Title 42, § 1455 (d), that "No land for any project to be assisted under . . . [the act] shall be acquired by the local public agency except after public hearing following notice" was satisfied by a hearing held by the State Housing Board preliminary to its approval of the project although the initiating housing authority, not the board, was "the local public agency" to acquire the land. [434]

Even if the plaintiff in a suit in equity had any right to be heard on a motion by the defendant for leave to file a plea, reserving answer, following the overruling of his demurrer, any questions which the plaintiff could have raised at a hearing on the defendant's motion would have been open at a hearing on a subsequent motion by the plaintiff to strike the allowance of the defendant's motion and to strike the plea filed. [435]

A plea in a suit in equity may set up several facts if they all establish a single point in bar of the suit. [435]

The modification of a restraining order to permit the taking of certain action was a matter in the discretion of the trial court. [435–436]

PETITION in equity, filed in the Superior Court on May 3, 1954, against the city of Worcester.

Following intervention by Worcester Housing Authority as a respondent, a motion by the respondents for leave to file a plea, reserving answer, was allowed, and a motion by

the petitioners to strike the allowance of the respondents' motion and the plea filed was denied, by *Hudson*, J., who adjudged the plea sufficient in law and allowed it. The plea was sustained after hearing by *Fairhurst*, J., and a final decree dismissing the petition was entered by *Cahill*, J.

*Saul A. Seder*, (*Simon Scheff* with him,) for the petitioners.

*Lewis H. Weinstein*, (*Harry J. Meleski*, City Solicitor, *Matthew R. McCann, Jr.*, & *Herbert L. Berman* with him,) for the respondents.

COUNIHAN, J. This petition in equity was brought under the provisions of G. L. (Ter. Ed.) c. 40, § 53, by more than ten taxable inhabitants of the city of Worcester to enjoin the city from taking action with respect to a land assembly and redevelopment project known as the New Salem Street Project, hereinafter called the project, undertaken by the Worcester Housing Authority, hereinafter called the authority. The authority was permitted to intervene as a party respondent and filed a demurrer reserving its answer. After the demurrer was overruled, the respondents, with the court's permission, filed a plea reserving their answers. The plea was allowed as sufficient in law and was sustained, and a final decree was entered dismissing the petition. The petitioners appealed. There was no error.

The project involved here was formulated under the provisions of Part IV of the housing authority law, G. L. (Ter. Ed.) c. 121, §§ 26JJ–26MM, as appearing in St. 1946, c. 574, § 1, and as amended by St. 1953, c. 647, §§ 18, 19, effective July 2, 1953. Section 26JJ declares that the acquisition of property for the purpose of eliminating substandard, decadent, or blighted open conditions thereon and preventing recurrence of such conditions in the area, the removal of structures and improvement of sites, the disposition of the property for redevelopment incidental to the foregoing, the exercise of powers by housing authorities and any assistance which may be given by cities in connection therewith, are public uses and purposes for which public money may be expended and the power of eminent domain exercised. Section 26KK provides the procedure

to be followed whenever the authority determines that an assembly and redevelopment project should be undertaken for a substandard, decadent, or blighted open area. The authority is required to apply to the State Housing Board, hereinafter called the Board, for approval of the project, accompanying the application with a plan for the project, a statement of the proposed financing method, and such other information as the Board may require. A public hearing must be held by the Board, provided a request in writing is made to it by the authority, the mayor or city council, or twenty-five taxable inhabitants of the city involved within ten days after submission of the project. The planning board of the city must find the plan to be based on a local survey and conforming to a comprehensive plan for the locality as a whole. The Board must concur in the findings of the planning board and find that the project area would not by private enterprise alone, and without the aid sought by the authority from the Federal government or other subsidy, be made available for development or redevelopment; that the proposed land uses and building requirements in the project areas in the locality where the project area is located will afford maximum opportunity to privately financed development or redevelopment consistent with the sound needs of the locality as a whole; that the financial plan is sound; and that the project area is a substandard, decadent, or blighted open area. The Board must notify the authority of its decision within thirty days after submission of the project. Section 26LL provides for the imposition of obligations on purchasers and lessees from the authority to prevent the recurrence of slum conditions.

On August 12, 1953, as a result of surveys begun in 1950, the authority adopted a "Land Assembly and Redevelopment Plan — New Salem Street Project Area in Downtown Worcester, Massachusetts," setting forth the details of the site of about twenty-three acres to be acquired and cleared by the authority; the streets and utility plans to be discontinued or widened; the new streets to be constructed;

the new pattern of sewers, water mains and other utilities
to be developed; the plan for redeveloping the project for
commercial, parking and public purposes; the restrictions
on the re-use of the site to prevent the recurrence of sub-
standard and decadent conditions; the prohibition of dis-
crimination in the use of the land on the basis of race,
creed, color, or national origin; the program of land ac-
quisition; a summary of the relocation plan; and the
relationship of the plan to planning objectives of the plan-
ning board.   By the same resolution, the authority also
adopted a relocation plan for the rehousing of residents of
the project area.   The resolution also traced a long history
of its preparation and study of the project, beginning with
the resolutions of the city council on August 23, 1950, and
of the authority on November 22, 1950, a redefinition of
the boundaries of the project on June 20, 1952, and various
contracts for preliminary Federal financial assistance for
surveys and plans.   The resolution also referred to findings
by the authority on August 5, 1953, that the project area
is substandard and decadent.   The authority resolved
(1) to submit the plan (a) to the planning board for its
findings under § 26KK, (b) to the Board for its requisite
findings and approval under § 26KK, and (c) to the city
council for acceptance and approval; (2) to submit to the
city council a form of coöperation agreement between the
authority and the city; and (3) to conduct a hearing as re-
quired by the Federal housing act of 1949, U. S. C. (1952 ed.)
Title 42, § 1455 (d).   On September 24, 1953, the planning
board found that the plan submitted by the authority was
based on a local survey and conformed to a comprehensive
plan for the city as a whole.

On October 30, 1953, following a public hearing on
October 15, 1953, the authority made a "Declaration of
Findings Relative to the New Salem Street Redevelopment
Project in Downtown Worcester, Massachusetts," which
concluded that the project area is substandard and de-
cadent.   The authority's findings, based on its surveys and
evidence introduced at the hearings, included subsidiary

findings as to the physical and social characteristics of the project area.

On February 8, 1954, and March 23, 1954, the authority adopted certain minor amendments to the plan. On April 20, 1954, following the recommendation of the Division of Slum Clearance and Urban Redevelopment of the Housing and Home Finance Agency, the authority approved "Appendix A (as modified)" to the plan, providing for the postponement of demolition of the Worcester Knitting Company building located within the project area, until the company relocates or discontinues its operations but in no event later than July 1, 1960. On April 22, 1954, the Worcester city council passed a resolution which referred to previous action of the authority, photographs of buildings in and the site of the project area, drawings and charts showing the present use and proposed re-use of the project area, the "general plan" of the city which "is recognized and used as a guide for the general development of the city as a whole," and the certificate of the planning board that the plan "conforms to the said general plan for the city as a whole." The council approved the plan, as amended, determined that it conformed to the general plan for the development of the city as a whole, determined the necessity of financial aid by the city for the project, of abandoning and laying out streets, sewers, water mains and other public facilities, and of coöperation with the authority, agreed to provide the municipal funds required by the coöperation agreement, and authorized the city manager to execute the coöperation agreement. On the same day, the coöperation agreement was signed by the city manager, acting for the city, and by the authority. It provided for contribution to the project of city funds and property constituting one third of the net project cost, but not more than $1,500,000.

On May 3, 1954, the petitioners commenced this suit in the Superior Court. On May 4, 1954, the authority submitted the plan for the project to the Board for its approval. On May 18, 1954, the chairman of the Board caused an advertisement to be published in two Worcester newspapers

of a public hearing to be held on May 25, 1954, concerning the project.

On May 25, 1954, the planning board met, and, after considering the amendments to the plan since its earlier action on September 24, 1953, ratified its previous vote and found that the plan, as amended, was based on a local survey and conformed to a comprehensive plan for the city as a whole. On the same day, the chairman of the Board conducted a public hearing in Worcester and on June 3, 1954, wrote to the authority that the Board concurred in the findings of the planning board, made the additional findings required by § 26KK, and approved the project. The chairman was the only member of the Board present at the hearing in Worcester and the only member participating in the making of the decision.

In their petition, the petitioners allege that the project area is not predominantly residential or substandard or decadent, that the resale of a portion of the area is for the purpose of creating a "new look" commercial district and for the material gain of private purchasers, that the authority has not secured the necessary findings nor the final approval of the Board, that the planning board has not made a proper determination as required by § 26KK, that neither the authority nor the planning board gave notice of any public hearing, and that the adoption of the city council resolution and the signing of the coöperation agreement will require the city to borrow to meet its commitments with the authority but that the city has thus far neglected to secure approval from the emergency finance board for the borrowing of money.

The respondents' plea in bar asserted that the validity of all acts alleged in the petition was fully established by the administrative record of the redevelopment program referred to in the petition. The administrative record consisted of the documentary record of the administrative action taken by the authority, the planning board, and the Board.

The petitioners moved to strike the allowance of the re-

spondents' motion for leave to file the plea, to strike the plea, to dismiss the plea, to take the bill for confessed, and to strike the plea as defective and objectionable as to form. The motions were all denied and the plea was allowed, to which rulings the petitioners excepted. There was no error.

At the hearing on the truth of the plea, the court excluded, subject to the petitioners' exceptions, all evidence tending to contradict and look behind the votes of the authority, the city council, the planning board, and the Board. The court also refused to treat the findings by the planning board under § 26KK of the housing authority law as though they were actions under the subdivision control law, G. L. (Ter. Ed.) c. 41, §§ 81K–81GG, inserted by St. 1953, c. 674, § 7. There was no error.

The judge found that this was a valid redevelopment project and that all jurisdictional conditions precedent had been complied with. The petitioners filed thirty-eight requests for rulings, the first two of which[1] were denied. The judge took no action on the other requests because of his finding that all jurisdictional prerequisites as to administrative action had been fully complied with. There was no error.

The constitutionality of the land assembly and redevelopment act under the housing authority law has been settled by several decisions of our court and the courts of other States as well as by the Supreme Court of the United States, decided since this suit was begun. *Papadinis* v. *Somerville,* 331 Mass. 627. *Despatchers' Cafe Inc.* v. *Somerville Housing Authority,* 332 Mass. 259. *Berman* v. *Parker,* 348 U. S. 26. See also cases cited in the *Papadinis* case in footnote on page 633. The constitutional question is so well settled as to require no further discussion.

The petitioners challenge the plan on the ground that it calls for sale of the property, following clearance of the area, to private commercial interests "for the express purpose of

---

[1] "1. On all the evidence, the defendant's plea, as a matter of law, is disproved. 2. On all the evidence, the intervener's plea, as a matter of law, is disproved."

creating and establishing a 'new look' commercial district in the entire project area." By its very nature, a slum clearance project must necessarily change the appearance of the area involved. Photographs showing conditions of the area before redevelopment and drawings showing how it would look afterward were shown to and considered by the authority to assist it in arriving at its decision whether or not to undertake redevelopment of the area. The improvement of the appearance and attractiveness of a project area has been recognized as a valid public purpose in *Berman* v. *Parker*, 348 U. S. 26, 33.

There is no merit in the attempt of the petitioners to attack the motives of the authority. There is no allegation that the authority does not intend to carry out the purposes for which the land in the area is to be taken. It is likewise immaterial whether the authority or any member of it may secretly have a motive other than slum clearance for supporting the project. *Despatchers' Cafe Inc.* v. *Somerville Housing Authority*, 332 Mass. 259, 263–264, and cases cited. *Allydonn Realty Corp.* v. *Holyoke Housing Authority*, 304 Mass. 288, 292–293. We are of opinion that the plan, on its face, shows that its dominant purpose is slum clearance.

The judge found, and there is evidence to support his findings, that the authority prepared and duly adopted the plan as amended, together with the relocation plan, and that all jurisdictional prerequisites to the action of the authority were fully complied with. The executive director and secretary of the authority produced and testified from the original minutes of the meetings of the authority held at divers times, in respect to the findings of the authority. These were records which the authority was required to keep. G. L. (Ter. Ed.) c. 121, § 26U, as appearing in St. 1946, c. 574, § 1. They constitute the only evidence to prove the action of the authority. *Carbone, Inc.* v. *Kelly*, 289 Mass. 602, 605.

The provisions of G. L. (Ter. Ed.) c. 121, § 26KK, hereinbefore referred to, make it plain that the authority had the

power to make initial determination of what areas required redevelopment on account of slum clearance and to make plans for such redevelopment. Under § 26KK the Board has no power except to approve or disapprove a plan decided upon by the authority.

The petitioners attack the relocation plan as discriminatory because of the presence of two spaces in the forms used by the authority for persons seeking relocation. These spaces were entitled "white" and "non-white." These forms also ask for information on family composition, ages, and income. When the alleged discrimination as to color was brought to the attention of the authority, it promptly announced that this was an inadvertence and that "Such a reference to race will not be included in the questionnaire which the Authority will print and use . . . ."

The petitioners also contend that the authority has been guilty of discrimination in permitting the Worcester Knitting Company to defer the demolition of its plant in the project area. But the authority in its judgment could have entirely excluded this plant from the area to be taken. *McAuliffe & Burke Co.* v. *Boston Housing Authority, ante,* 28. Its decision to take this property but allow the occupant to remain in possession of it for a longer time than that allowed other occupants of property taken was not an abuse of discretion. General Laws (Ter. Ed.) c. 121, § 26P, as appearing in St. 1946, c. 574, § 1, as amended, expressly permits an authority to lease property taken by it so that there is nothing illegal about the authority entering into a landlord and tenant arrangement with the Worcester Knitting Company.

Chapter 121, § 26KK, already referred to, provides that a redevelopment project may not be undertaken without the approval of the Board, which may be given only if the local planning board has made certain findings specified in § 26KK. There is ample evidence in the record that the planning board of Worcester made the necessary findings.

The petitioners further attempted to prove that the provisions of the subdivision control act, G. L. (Ter. Ed.) c. 41, §§ 81K–81GG, inserted by St. 1953, c. 674, § 7, were not

complied with in obtaining the approval of the planning board. The exceptions taken to the exclusion of evidence on this point are without merit. There is nothing to indicate that c. 121, § 26KK, incorporated such provisions of c. 41 into it. Whether or not the authority will ultimately be required to submit a subdivision plan for approval under c. 41 is a matter not now before us and as to which we express no opinion.

There was evidence from the chairman of the Board that the authority's application for approval was accompanied by a plan of the project and a statement of method proposed for financing it as required by the housing authority law. There was also evidence that the Board approved everything the authority had done with reference to the project. The petitioners attempted to show that the findings of the planning board were not before the Board when through its chairman it held a hearing on the plan for the project in Worcester on May 25, 1954. The petitioners excepted to the exclusion of evidence to this effect. There was no error. The statute, c. 121, § 26KK, as it presently exists, does not require submission of the findings of the planning board to the Board. It is enough if such findings are made and concurred in by the Board prior to its approval of the project. This was done.

Section 26KK now provides that the "board shall hold a public hearing upon such project, if requested in writing to so do, within ten days after the submission of the project, by the housing authority, or by the mayor or city council of the city . . . in which the proposed project is located, or by twenty-five or more taxable inhabitants of such city . . . ." The petitioners contend that § 26KK should be construed so as to require that the public hearing be held within ten days after the submission of the project to the Board. Because no hearing was held by the Board until May 25, 1954, they argue that the action of the Board was invalid. We do not agree. We think that the ten day period referred to in § 26KK is the time allowed for requesting a hearing.

The petitioners also contend that the action of the Board was illegal because its chairman alone attended and conducted the public hearing on May 25, 1954, and that he alone approved the plan for the project on June 3, 1954. There is no merit to this contention. General Laws (Ter. Ed.) c. 6, § 64, inserted by St. 1948, c. 260, § 3, as amended, provides that the Board shall make an annual report to the General Court and such additional reports as it or the Governor may deem advisable. It expressly provides that "All other powers and duties of the board shall be exercised and performed by the chairman as hereinafter provided." The other members of the Board only serve as an advisory council to the chairman. From this it is plain that the chairman alone has power to hold necessary public hearings and to approve projects such as this on behalf of the Board.

The petitioners further complain that the findings of the planning board and the approval of the Board were conditions precedent to the approval of the project by the city council and the adoption and execution of the coöperation agreement. The sequence of the actions in this case, however, is the same as that followed and approved in *Papadinis* v. *Somerville*, 331 Mass. 627. The weakness of their complaint is shown by the provisions of § 26KK which require that the application of the authority to the Board must be accompanied by ". . . a statement of the method proposed for financing the project . . . ." This necessarily implies prior action by the city in the form of a coöperation agreement.

Another contention of the petitioners is that the acts of the planning board and the Board are invalid because they took place after the commencement of this suit. Such acts, however, were brought to the attention of the court by the plea in bar of the authority and after a hearing were found as facts by the court. A court of equity may find and consider facts existing at the time of entry of the decree whether they came into existence after the commencement of suit or not. *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 488.

*Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 111, and cases cited.

The petitioners also urge that because the city will have to borrow money to meet its commitments to the authority it should have first received the approval of the Emergency Finance Board (created by St. 1933, c. 49, § 1) as required by G. L. (Ter. Ed.) c. 121, § 26DD, as appearing in St. 1946, c. 574, § 1, as amended in a manner not here material. There is no evidence that the city intends or is attempting to borrow any money. There will be time enough to seek authority to borrow when and if the city authorities decide that such loans are necessary. We cannot assume in advance that the city will act contrary to law.

During the trial the petitioners sought to introduce evidence to controvert the findings of the authority, the planning board and the Board. Such evidence was properly excluded. The Legislature has given these agencies power to make necessary findings in the circumstances of this case. Their findings are not to be retried in our courts. *Stockus* v. *Boston Housing Authority,* 304 Mass. 507, 509–510. *M. Doyle & Co. Inc.* v. *Commissioner of Public Works of Boston,* 328 Mass. 269, 271–272. *Despatchers' Cafe Inc.* v. *Somerville Housing Authority,* 332 Mass. 259, 261–262.

Yet another contention of the petitioners is that the public hearing held by the authority on October 15, 1953, did not conform to the United States housing act, U. S. C. (1952 ed.) Title 42, § 1455 (d), since there were subsequent changes made in the plans of the project. That statute provides that "No land for any project to be assisted under this subchapter shall be acquired by the local public agency except after public hearing following notice of the date, time, place, and purpose of such hearing." The statute does not specify that the public agency acquiring the land (that is the authority) must itself conduct the public hearing. We believe that the requirements of the Federal act were met by the hearing held by the Board on May 25, 1954. Moreover the changes made in the plans following the hearing by the authority on October 15, 1953, were of little, if

any, importance and did not add to or subtract from the
land to be taken.

, The petitioners' remaining objections and exceptions all
have to do with procedure and pleading. It is contended
that the allowance ex parte of the motion to file a plea,
reserving answer, following the overruling of a demurrer
was in violation of Rule 28 of the Superior Court (1954)
because the petitioners were given no opportunity to be
heard. But this rule expressly provides that the court
"may give leave ex parte to a defendant to file a demurrer
or plea, reserving his answer." Even if we assume, without
deciding, that the petitioners had some rights to be heard,
it is plain that whatever questions could be raised at such a
hearing were open at the hearing before the judge on their
motion to strike the plea. The denial of that motion was
equivalent to an exercise of discretion allowing the plea to
be filed.

The motions to dismiss the plea as insufficient and to
take the bill as confessed were based upon contentions which
we have hereinbefore disposed of. *Papadinis* v. *Somerville,*
331 Mass. 627, 630–631.

There is no merit to the petitioners' objections that the
plea is defective in form in that it does not set up a single
fact or point which, if proved, would as matter of law
dispose of the case. This objection overlooks the fact that
while only one point or issue may be set up in the plea, a
variety of evidence may be necessary to prove it. It was
said in *Berenson* v. *French,* 262 Mass. 247, at page 255,
"While the issue raised must be confined to a single point,
facts may be proved having a tendency to establish it;
even if it is the issue only that must be single, a defence
offered by way of a plea consists of a variety of circum-
stances, and, if they all tend to a single point, the plea is
good." Here the single point raised by the plea is the
validity of the redevelopment project proposed by the
authority.

Finally the petitioners object to the order of the judge
modifying the original restraining nunc pro tunc as of

May 10, 1954, to permit the planning board to meet on May 25, 1954, to approve the plans as amended by the authority. This was a matter entirely within the discretion of the judge and no abuse of discretion is shown.

The statutes under which the authority and the other agencies acted are not unconstitutional and have been meticulously complied with.

*Exceptions overruled.*

*Interlocutory and final decrees affirmed.*