GERALD J. DELPRETE & another *vs.* BOARD OF SELECTMEN OF
ROCKLAND & another.

Plymouth.    October 4, 1966. — November 4, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* Town meeting.  *Eminent Domain,* Agricultural
land.

A vote of a town meeting on a matter required by the town's by-laws to
be acted on only when a quorum of four hundred voters was present
was valid even though, more than four hundred voters being present,
less than four hundred voters voted on the matter; a provision of the
by-law that "a number less than four hundred (400) may take action"
on certain matters did not imply that four hundred voters must vote on
matters requiring a quorum present.   [345]

No basis was shown in a suit in equity for reviewing a decision of the
selectmen of a town, following compliance by them with G. L. c. 79,
§ 5B, to take by eminent domain for school purposes land of the plain-
tiffs used for agricultural purposes.   [345–346]

Even though the owner of agricultural land proposed to be taken by emi-
nent domain does not assent to the taking and nonagricultural land is
shown to be available, G. L. c. 79, § 5B, does not require selection of
the nonagricultural land for the taking.   [346]

BILL IN EQUITY for declaratory relief filed in the Superior
Court on April 5, 1965.

The plaintiffs appealed from a final decree entered after
hearing by *Brogna,* J.

*John T. Burke* for the plaintiffs.

*James H. Kenney* for the defendants.

WHITTEMORE, J.   1.   The final decree correctly ruled that
the vote of the Rockland town meeting on March 1, 1965,
authorizing the taking of the plaintiffs' agricultural land
for school purposes and making an appropriation therefor,
was valid.   The issue is the presence or absence of a quo-
rum when the vote was taken.   The by-laws fixed the quo-

rum at 400 voters.[1]   The presence of a quorum was not challenged before or after the vote.   The official check at the start of the meeting recorded 706 registered voters present.   So far as appears, the record of the meeting shows no lesser number.   Parol evidence could not be received to contradict the record.   *Halleck* v. *Boylston*, 117 Mass. 469.   See also *Mayhew* v. *District of Gay Head*, 13 Allen, 129, 134.   The judge found, with support in the testimony outside the record of the meeting, that, at the time of the vote, there were present at least between 500 and 550 voters.   That only 348 voters (233 in favor, 115 opposed) voted on the article does not show that 400 voters were not present.   The provision of the by-law that ''a number less than four hundred (400) may take action'' on certain matters and adjourn the meeting does not imply that 400 must vote on matters requiring the presence of a quorum.   *United States* v. *Ballin*, 144 U. S. 1, 5–6.   Robert's Rules of Order (Rev. 75th anniv. ed.) § 64.   Johnson, Trustman and Wadsworth, Town Meeting Time, § 5.

2.   The final decree correctly ruled that the selectmen had complied with G. L. c. 79, § 5B.[2]   It is undisputed that after the town meeting the selectmen gave notice of intention to take the land, set a date and place for and held the required hearing, at which the plaintiffs were heard, and thereafter inspected the seven alternate sites suggested by the plaintiffs, accompanied on their inspection by the chairman of the assessors and a member of the school building committee.   No basis for reviewing the selectmen's deci-

[1] ''Section 7.   The number of voters necessary to constitute a quorum at town meetings, except such parts of meetings as are devoted exclusively to the election of town officers, shall be four hundred (400); provided, however, that a number less than four hundred (400) may take action on any articles not requiring the raising and appropriating or transferring of money and also to adjourn the meeting from time to time.''

[2] ''Section 5B:   No property used for agricultural purposes shall be taken without the consent of the owner thereof, except after a hearing by the board at which such owner shall be entitled to be heard and allowed to introduce evidence that other land not used for agricultural purposes is available for the public use for which it is intended to take his property.   The provisions of this section shall not apply to takings by any agency in behalf of the commonwealth, or to takings for highway purposes, or to takings authorized by the department of public utilities except that in such takings notices of hearings required by section seventy-two of chapter one hundred and sixty-four shall be sent to all interested parties.''

sion is shown. See *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 261; *Harrington* v. *Worcester,* 345 Mass. 166, 167–168. So far as appears, each selectman, in voting to take the plaintiffs' land, acted in accordance with his best judgment in the light of all the relevant circumstances. In deciding to take the land, the selectmen properly could give weight to the vote of the town following a committee's recommendation. There is nothing in the suggestion that one of the selectmen could not properly have performed his function as selectman because he had been a member of the school building committee, nor that the selectmen's vote to take the land is invalidated by the presence on the inspection trip of a member of that committee presumably committed in his views to the DelPrete site.

The judge correctly ruled that, although the owners of the agricultural land do not assent to the taking of their land, and a nonagricultural site is available, the statute does not require the selection of a nonagricultural site. The effect of the statute is to assure the owners of agricultural land full opportunity to be heard. Of course, where the taking is by a town, there is other opportunity to be heard than that given by the statute. Compare *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372, 375. In a town, the selectmen may take land only after the town's authorizing vote. G. L. c. 40, § 14. Usually also the town acts on a committee's recommendation. The chance to be heard in opposition before the committee and at the town meeting is of paramount importance. The plaintiffs opposed the taking before the committee and later at the town meeting, where they were accompanied by counsel.

3. We have considered all the issues argued. Nothing turns on the absence of formal notice of the committee's hearing. G. L. c. 39, § 23C.

*Final decree affirmed.*