FRANK J. REDFERN, APPELLANT, v. BOARD OF COMMIS-
SIONERS OF THE CITY OF JERSEY CITY, A PUBLIC
BODY CORPORATE, AND PRUDENTIAL INSURANCE
COMPANY OF· AMERICA, A CORPORATION OF THE
STATE OF NEW JERSEY, RESPONDENTS.

Argued February 3, 1948—Decided May 13, 1948.

For the appellant, *Maurice C. Brigadier*.

For the Board of Commissioners, *Charles A. Rooney* and
*Charles Hershenstein*.

For Prudential Insurance Company, *Milton, McNulty &
Augelli (John Milton)*.

For the State of New Jersey, *Walter D. Van Riper*.

The opinion of the court was delivered by

BODINE, J. This is an appeal from a judgment entered
in the Supreme Court dismissing a writ of *certiorari* allowed
to review two ordinances of the City of Jersey City, hereafter
called the City. By special leave of the Supreme Court, the
record has been supplemented by depositions which were not
before that court. This is due to the urgent public interest
in securing an early adjudication in this court.

The ordinances in question were adopted to facilitate a
redevelopment housing project in co-operation with the Pru-
dential Insurance Company, hereafter called Prudential. One

of the ordinances provides for the acquisition by the City of the required lands and the financing of the cost thereof. The other approves a contract and lease between the City and Prudential, in which the details of the operation are set forth with great particularity.

The legal obligation of the parties has matured and the commencement of the project will begin as soon as possible after the determination of this case, in the event that we decide that the ordinances and the Urban Redevelopment Law of 1946, *Pamph. L., ch.* 52, are not prohibited by the Constitution of 1844. The new constitution adopted in November, 1947, deals with the clearance and replanning of blighted areas. The lands in question in this case are, for the most part, not built upon and perhaps do not fall within the new grant. The acts under review were completed before the new constitution became effective.

The need for housing in the city is very acute. The reasons for the lack of private building are economic. The speculative builder is no longer a favorite with the banks. High taxes, high cost of labor and scarcity of material have resulted in a paralysis of building enterprises. There is need for 23,968 additional houses in the city. The construction of new houses for the years 1940 to 1946, inclusive, in that city were 165, 58, 22, 14, 41, 23 and 119. During the years 1940 through 1945, there were demolished the following number of obsolete abodes, 127, 129, 112, 111, 70 and 96. The state is in urgent need of at least 229,440 dwelling houses. The condition is a serious threat to public health and welfare. Civilized man cannot live in this climate without suitable houses.

It would be possible to state further facts and figures to demonstrate the pressing need for new dwelling units but since all informed public minded persons agree that the situation is real and pressing there exists no need to say little more.

Since 1920, public housing has been regarded by the legislature as a matter of state concern. Eleven separate acts have been adopted in one form or another to provide for participation, aid or assistance in providing housing, as will appear by reference to the Public Laws.

The Urban Redevelopment Law, *Pamph. L.* 1946, *ch.* 52,

seeks to accomplish the public purpose of providing adequate public housing by enlisting the participation of private capital and enterprise for a fixed and limited statutory period and rent. Section 2 of the statute states the legislative object. Section 3 permits any private person or agency to present to the governing body in any municipality an application for approval of a project for the construction, at the expense of the applicant, of new housing facilities of proper standard. Under section 5, if the governing body decides that the project is in the public interest and so decides by resolution it may enter into a contract with the applicant containing provisions to finance the same. A private corporation making application under the act receives no general proprietorship in the project. Its status is similar to that of a mortgagee in possession. . Its purpose is to assist in bringing about means for providing requisite public housing. The private corporation lends its capital and its abilities and experiences to obtain construction engineers, real estate managers and maintenance men for the project. It is paid a minimum four per cent. and a maximum six per cent. annually upon its investment during the amortization period of its loan, if such are earned. The period may not exceed sixty years. Whether the investment and interest are recaptured, the lease at the expiration of sixty years is terminated and the property with the improvements becomes the sole and unrestricted estate of the municipality.

A close examination of the statute, the ordinances and the contract demonstrate that the specifications made mandatory by the statuté have been complied with by the ordinances and contract before us; in fact, the appellant concedes that the contract is in full compliance with the statute.

The contract in question provides for the payment of a ground rental of $24,700 per annum during the first ten years, $18,500 during the next ten years and $13,600 per annum thereafter until the completion of the amortization of the project. In 1946, the amount of taxes payable on the property to be acquired by the city would have amouted to $13,959.80, if such property had been in private ownership. The city, however, has actually received in taxes from the

property only an average of $300 annually since 1943, when a substantial part of the lands appear to have been acquired.

The Prudential project calls for the construction of nine garden apartment type buildings and 100 garages. The buildings will contain 653 apartments, mostly of three and four rooms, with a total number of 2,221 rooms. The estimated cost will be $4,059,500 or $1,700 per room. It is hoped that on the basis of charges and expenses reasonably in prospect the investment will be amortized during the twenty-ninth year.

It is unnecessary here to make a detailed study of the specific provisions of the undertaking, since we think all tend to the furtherance of a necessary public project.

The attack upon the constitutionality of the law in question rests upon two basic contentions; namely, (1) the statute authorizes a municipality to take lands and then lease them for a purpose which is not public but is private in nature; and (2) the exemption from taxation which the statute authorizes the municipality to grant is in violation of article 4, section 7, paragraph 12 of the Constitution of 1844 in that it provides that property shall be assessed for taxes under general laws and by uniform rules according to its true value. Of course, the second contention necessarily depends upon the first, for the reason that the attack upon the exemption is predicated upon the conclusion that the statute authorizes a municipality to take the lands for private use.

Public housing is a public purpose for which public funds may be expended. *Romano* v. *Housing Authority of Newark,* 123 *N. J. L.* 428; affirmed, 124 *Id.* 452; *Ryan* v. *Housing Authority of Newark,* 125 *Id.* 336. See *Tidewater* v. *Coster,* 18 *N. J. Eq.* 518; *Simon* v. *O'Toole,* 108 *N. J. L.* 32; *affirmed, Id.* 549, and the reasoning implicit in each of these cases.

The Urban Redevelopment Law and the ordinances under review do not constitute a donation by a municipality to a private corporation of any property. The whole purpose is to remedy, in part, a situation now a public danger to health and welfare.

As we have seen, the City receives in rent more than it received years ago by way of taxes or would receive to-day by way of taxes if the lands in question were in private use.

As Chief Justice Beasley said in *Tidewater* v. *Coster, supra:* "It is the resulting general utility which gives such enterprises a kind of public aspect, and invests them with privileges which do not belong to mere private interests."

The legislature may exclude from taxation and thus exempt property constituting a proper class. *State Board of Assessors* v. *Central Railroad Co.*, 48 *N. J. L.* 146. Undoubtedly, the whole legislation would be unconstitutional were it not for the public use. To provide housing, when housing is a pressing need, is the justification for the legislation.

The property to be used, as soon as the plan becomes effective, is an appropriate class for the exemption provisions, if in fact there were in any sense an exemption.

We see no delegation of governmental powers to a private business corporation any more than in the case of delegating the power of eminent domain to railroad companies and traction companies, and others, to carry on a business made necessary to properly serve the public.

All other points made in the briefs and argument of counsel have been carefully considered but do not seem to us to require further discussion.

The judgment of the Supreme Court will be affirmed.

*For affirmance*—THE CHANCELLOR, BODINE, DONGES, HEHER, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 12.

*For reversal*—None.