Hillsborough,
No. 4326.

GEORGE VELISHKA & a.

*v.*

CITY OF NASHUA AND NASHUA HOUSING AUTHORITY.

Argued June 2, 1954.

Decided July 1, 1954.

*Aaron A. Harkaway* and *Leonard D. Velishka* (*Mr. Harkaway* orally), for the plaintiffs.

*Normand R. Pelletier* for the city of Nashua.

*Antoine A. Guertin* and *Joseph M. Corwin* (of Massachusetts) (*Mr. Guertin* orally), for Nashua Housing Authority.

KENISON, C. J. One of the primary purposes and powers of any housing authority under R. L., c. 169, as amended, in effecting a redevelopment project is to acquire "blighted areas." Laws 1947, c. 210, s. 2. These are defined in section 2 (1) "as areas (including slum areas) with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community." The plaintiffs do not challenge the law creating Housing Authorities (R. L., c. 169, as amended) nor statutes which provide for low-rent housing and slum clearance (Laws 1947, c. 286) in view of *Opinion of the Justices,* 94 N. H. 515, and *Leary* v. *Manchester,* 91 N. H. 442,

446. The attack is directed solely at certain features of the Urban Redevelopment Law (*c.* 210, *supra*) which are alleged to be unconstitutional.

Formerly attempts to prevent the spread of slums and blighted areas were indirect and prospective in operation. They took the form of minimum building regulations and the adoption of comprehensive zoning ordinances. *Sundeen* v. *Rogers,* 83 N. H. 253. This was followed by statutes providing for the elimination of slums and their replacement by public housing areas. R. L., *c.* 169, as amended. The validity of these methods has been quite uniformly sustained. Anno. 130 A. L. R. 1069; 172 A. L. R. 966. The participation of the Federal government in housing projects by aiding states and municipalities was held in one didactic sentence to be clearly within the power of Congress to provide for the general welfare. *Cleveland* v. *United States,* 323 U. S. 329, 333. It soon became apparent that the elimination of a slum accomplished little if the area in which it was located was no longer suitable for housing. Then followed Title I of the Housing Act of 1949 (42 U.S.C.A., *s.* 1451, *et seq.*) which allowed grants and loans to municipalities to eliminate slum and blighted areas under redevelopment laws like Laws 1947, *c.* 210. See *Schneider* v. *District of Columbia,* 117 F. Supp. 705.

In a recent case decided March 30, 1954, *Gohld Realty Co.* v. *Hartford,* (Conn.) 104 A. (2d) 365, 372, it was noted that redevelopment laws, similar to the statute challenged here, have been enacted in thirty-four states, the District of Columbia and four territories. In sustaining the Connecticut law that court made the following summary: "We find support for the conclusions we have reached in the overwhelming weight of the authorities in other jurisdictions . . . In only two states has it been held unconstitutional. In at least fourteen jurisdictions where the legislation has been challenged on some or all of the grounds advanced by the plaintiff in this case it has been held valid."

Section 1 of the New Hampshire Act contains an elaborate statement of legislative findings and declarations of necessity relating to the elimination of blighted areas and the advancement of redevelopment projects. The Legislature has declared that blighted areas exist within the state (*s.* 1(a) ); "that such areas . . . constitute a menace to the health, safety, morals and welfare of the residents of the state" which "necessitate excessive and disproportionate expenditures of public funds" (*s.* 1(b) ); that

redevelopment projects "are public uses and purposes for which public money may be spent and private property acquired" (s. 1(c) ); that it is in the public interest that such areas be acquired by eminent domain and financed by public agencies under a redevelopment plan which is a public use and for a public purpose (s. 1(d) ); that such redevelopment activities "will aid the production of better housing and more desirable neighborhoods and community development" (s. 1(e) ); "that it is in the public interest that advance preparation for such projects and activities be made now, and that the necessity in the public interest for the provisions hereinafter enacted is hereby declared as a matter of legislative determination" (s. 1(f) ).

These legislative findings and declarations have no magical quality to make valid that which is invalid but they are entitled to weight in construing the statute and in determining whether the statute promotes a public purpose under the Constitution. *Allydonn Realty Corporation* v. *Holyoke Housing Authority*, 304 Mass. 288, 294. "Although such legislative declarations are subject to judicial review they are entitled to a *prima facie* acceptance of their correctness." *Belovsky* v. *Redevelopment Authority*, 357 Pa. 329, 334. That principle has been applied in this state. *Opinion of the Justices*, 94 N. H. 515, 517. "A legislative declaration of purpose is ordinarily accepted as a part of the act." *Opinion of the Justices*, 88 N. H. 484, 490. "Unless a court can clearly see that a law purporting to have been enacted to protect the public health and public morals has no relation to those objects, it cannot set it aside as unconstitutional and void." *State* v. *Roberts*, 74 N. H. 476, 478. This general rule has been consistently applied in this state in considering the constitutionality of various types of statutes enacted under the police power. *Chung Mee* v. *Healy*, 86 N. H. 483, 484; *State* v. *Dickstein*, 89 N. H. 546; *Chronicle &c. Pub. Co.* v. *Attorney General*, 94 N. H. 148.

The view that redevelopment projects constitute a valid public purpose for which public funds may be appropriated and the power of eminent domain granted is approved by the overwhelming weight of authority. See, for example the following cases: *Ajootian* v. *Providence Redevelopment Agency*, (R. I.) 91 A. (2d) 21; *Chicago Land Clearance Commission* v. *White*, 1 Ill. (2d) 69; *Foeller* v. *Housing Authority of Portland*, 198 Ore. 205; *Belovsky* v. *Redevelopment Authority*, 357 Pa. 329; *Hunter* v. *Norfolk Redevelopment & Housing Authority*, 195 Va. 326; *Murray* v. *La-*

*Guardia,* 291 N. Y. 320. The validity of slum clearance and low-rent housing applies with equal force to the elimination of blighted areas and their subsequent redevelopment. In effect the Legislature has declared that redevelopment projects are "instituted for the common benefit . . . of the whole community, and not for the private interest or emolument of any one man, family, or class of men" (N. H. Const. Part I, *Art.* 10) and are in promotion of "the benefit and welfare of this state." N. H. Const. Part II, *Art.* 5; *Opinion of the Justices,* 88 N. H. 484, 489; *Opinion of the Justices,* 94 N. H. 515. A contrary view has been expressed in *Housing Authority of Atlanta* v. *Johnson,* 209 Ga. 560 and *Adams* v. *Housing Authority,* (Fla.) 60 So. (2d) 663, but they represent a distinct minority which we do not follow.

The act is specifically challenged because it allows the Authority to make the land in a redevelopment project available for sale or lease to public or private agencies. It is contended that this is an improper exercise of the power of eminent domain, even if the original taking may be for a public purpose because the ultimate disposition of the property is not for a public use. The same contention was made and answered in *Gohld Realty Co.* v. *Hartford,* 104 A. (2d) 365, 369, 370: "The purpose of the act is not only to remove slums and blighted areas but also to prevent the redeveloped areas from reverting to their former status . . . This is accomplished by requiring as a condition of sales and leases of portions of the area to private persons that the property ["be developed or redeveloped for the purposes specified in such plan." Laws 1947, c. 210, s. 5]. If the public use which justifies the exercise of eminent domain in the first instance is the use of the property for purposes other than slums, that same public use continues after the property is transferred to private persons. The public purposes for which the land was taken are still being accomplished." The resale or lease with conditions consistent with the redevelopment plan are an essential and continuing part of the public purpose. This has been recognized in many jurisdictions. *Hunter* v. *Norfolk Redevelopment & Housing Authority,* 195 Va. 326; *Zurn* v. *Chicago,* 389 Ill. 114; *State* v. *Rich,* 159 Ohio St. 13; *In re Slum Clearance in Detroit,* 331 Mich. 714.

It is to be noted that the plaintiff Velishka's property is not blighted property and it is urged that the act thereby allows the power of eminent domain to be employed for uses inconsistent with the purposes of the act. The intent of the act was to acquire and

prevent recurrence of "blighted areas." Experience has shown and the facts of this case indicate that the area must be treated as a unit and that a particular building either within or near the blighted area may have to be included to accomplish the purposes of the act. It is not necessary that every building in such an area be in a blighted condition before the whole area may be condemned. It is sufficient that the taking as a whole is reasonably necessary to the clearance of blighted areas and prevention of their recurrence. See *Schneider* v. *District of Columbia,* 117 F. Supp. 705, 721, 724. This question has been passed on and decided adversely to the plaintiffs in several cases. *Kaskel* v. *Impellitteri,* 306 N. Y. 73. See *Stockus* v. *Boston Housing Authority,* 304 Mass. 507. 2 Nichols, Eminent Domain (3d *ed.* 1950) *s.* 7.5156.

The redevelopment statute is said to contain an unconstitutional delegation of legislative authority to the housing authority. *Ferretti* v. *Jackson,* 88 N. H. 296; *Hanover* v. *Atkins,* 78 N. H. 308. It is true that in order to avoid the charge of unlawfully delegated legislative power, the statute must lay down basic standards and a reasonably definite policy for the administration of the law. *Trustees &c. Academy* v. *Exeter,* 92 N. H. 473. It is recognized, however, that in matters relating to public resources and public health the standards and policy may of necessity require more general grants of authority. *Conway* v. *Water Resources Board,* 89 N. H. 346; *Meredith* v. *State,* 94 N. H. 123, 132; *Firemen's Insurance Co.* v. *Houle,* 96 N. H. 30. See *Opinion of the Justices,* 94 N. H. 510. "The fact is . . . that the act contains as definite a description of what constitutes a blighted area as it is reasonably possible to express; in regard to such factors as the selection and the size of the areas to be redeveloped, the costs involved, and the exact form which the redevelopment in any particular case is to take, it was obviously impossible for the Legislature to make detailed provisions or blueprints in advance for each operation." *Belovsky* v. *Redevelopment Authority,* 357 Pa. 329, 342. Furthermore, there were secondary standards imposed on the city before it could approve the redevelopment plan. Laws 1947, *c.* 210, *s.* 4. It is doubtful if the Legislature could have prescribed a more definite set of standards but in any event the authorities are clear that such delegation of legislative authority in an urban redevelopment act is lawful. *Herzinger* v. *Mayor & City Council of Baltimore,* (Md. App.) 98 A. (2d) 87; *Ajootian* v. *Providence Redevelopment Agency,* (R. I.) 91 A. (2d) 21; *Gohld Realty Co.* v. *Hartford,* (Conn.) 104 A. (2d) 365, 372.

Section 5 of the act permits the housing authority to sell or lease the land in the project area "at its use value" which may be less than the cost of acquisition, clearance and site improvements. The sale or lease to private enterprise is required to be made subject to conditions that will insure that the blighted or slum conditions do not return. The plaintiffs argue that this allows the city of Nashua in violation of N. H. Const., Part II, *Art. 5*, to expend funds for the benefit of persons who will purchase or lease the land. *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1. Since a municipality may sell or lease its property if it is not needed for a public use (*Meredith* v. *Fullerton*, 83 N. H. 124), they have the right to sell the property on conditions which continue the public use even though the title may be transferred to private enterprise or some other public agency. The sale or lease is not a gratuity since it is made at its use value as a means of assuring the redevelopment in accordance with the redevelopment plan. *Cf. Opinion of the Justices*, 95 N. H. 548. There is no grant of public funds for private purposes in violation of the Constitution since the housing authority may sell or lease the land only at a use value and for uses which are consistent with the continuous use of the redevelopment in accordance with the original public purpose and plans. *Leavitt* v. *North Hampton*, 98 N. H. 193. 198.

We find no constitutional infirmity in Laws 1947, *c.* 210, to the extent they have been considered in this proceeding. The claim that the act may be used to accomplish matters not directly related to redevelopment does not militate against the constitutionality of the act. We conclude that the act is constitutional on its face and as applied to the facts and agreement of this case. 1953 Annual Survey of American Law, 333.

*Bill dismissed.*

All concurred.