Alfred STARR et al., Plaintiffs,

v.

The NASHVILLE HOUSING AUTHORITY et al., Defendants.

Civ. No. 1804.

United States District Court
M. D. Tennessee, Nashville Division.

Oct. 8, 1956.

Waller, Davis & Lansden, Barksdale, Hudgins & Osborn, Elkin Garfinkle, Nashville, Tenn., and Sher, Oppenheimer & Harris, Attys., Washington, D. C., for plaintiff.

Williams, Harwell, Howser & Thomas, Robert Alexander, Hooker, Keeble, Dodson & Harris, and Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., for defendant.

Before MARTIN, Circuit Judge, and DAVIES and WILLIAM E. MILLER, District Judges.

PER CURIAM.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiffs and defendants, and, after due consideration thereof, the Court enters its findings of fact and conclusions of law, as follows:

Findings of Fact

1. Plaintiffs Alfred Starr, Milton Starr, and Michael Starr, individually and as Trustees of the estate of Jacob Starr, deceased, own the land and building at 423 Fourth Avenue, North, in the City of Nashville, known as the Bijou Theatre property. This theatre is located in the downtown business section of Nashville, in an area in which businesses conducted by Negroes predominate, and is operated as a motion picture theatre for Negro patrons. A part of the building is used as offices for the officers and employees of the Bijou Amusement Company, which operates other similar theatres throughout the southern states.

2. The plaintiff H. G. Hill Realty Company, a Tennessee corporation, owns the land and building at the northeast corner of Charlotte Avenue and Fifth Avenue in the City of Nashville, including a one-story building on the corner. The store building was formerly used as a grocery store and is now leased to Montgomery Ward & Company, which operates a retail store for the sale of automotive supplies in said building. This plaintiff also owns parking lots adjacent to said building on both the east and north, one of which is used for patrons of the Montgomery Ward store, and the other as a commercial parking lot. This property is in the same city block with the property of the plaintiffs Alfred Starr, et al., above described, both properties being located in the city block bounded on the south by Charlotte Avenue, on the east by Fourth Avenue, North, on the west by Fifth Avenue, North, and on the north by Capitol Avenue.

3. Defendant, Nashville Housing Authority, is a public body and body corporate and politic of the State of Tennessee, with situs in this district. The Board of Commissioners of said Nashville Housing Authority, consisting of Walter J. Diehl, Chairman, and four other citizens of Nashville, met on April 17, 1950, and adopted resolutions whereby an application was made to defendant, Housing and Home Finance Agency, an instrumentality of the United States Government, for what was referred to as a "Final Advance of Funds", for plans and other activities in preparation of projects to be assisted under Title I of the Housing Act of 1949, 42 U.S.C.A. § 1451 et seq. The minutes

recited that this application had been prepared under the direction of Mr. Dale Hawkins and Mr. John Acuff. Thereafter, in July, 1950, said Nashville Housing Authority entered into a contract with the defendant, City of Nashville, for collaboration on a project known as the Capitol Hill Redevelopment Project. The boundaries of said proposed project, as described in the application to Housing and Home Finance Agency and in the contract with the City of Nashville, excluded the Morris Memorial Building at the corner of Fourth Avenue, North and Cedar Street, and excluded property to the west thereof, fronting on Charlotte Avenue (which is an extension of Cedar Street) between Fourth Avenue, North and Fifth Avenue, North, including the property of the plaintiff, H. G. Hill Realty Company. The reason given in the application for excluding the buildings fronting on Charlotte Avenue between Fourth Avenue, North and Fifth Avenue, North was stated to be that they were "predominantly commercial in character, although there are families living on the second and third floors of some of the buildings, and the exclusion of these buildings will not prevent the redevelopment of the area by a logical plan".

4. The application for Final Advance of Funds was granted by Housing and Home Finance Agency, and thereafter, Nashville Housing Authority adopted "The Redevelopment Plan for the Capitol Hill Redevelopment Project UR Tenn. 2–1," dated March, 1952. The project area, as described in this Plan, continued to exclude the Morris Memorial Building, but included the entire block bounded on the south by Charlotte Avenue, on the east by Fourth Avenue, North, on the west by Fifth Avenue, North, and on the north by Capitol Avenue. The Redevelopment Plan was approved by the City Council of Nashville on April 29, 1952, after a public hearing as required by law. 42 U.S.C.A. § 1455; Tennessee Code Supp. 1950, Sec. 3647.29P, Tenn.Code Annotated, Sec. 13–815.

5. The Bijou Theatre building was erected in 1904; was designed by the same architect who designed the Metropolitan Opera House in New York; and was built of what is known as ordinary construction. The exterior walls are masonry; the first floor is concrete laid directly on the ground; and floors and balconies are of wood construction. Approximately 75 per cent of the buildings in downtown Nashville are of this type of construction. The Bijou Theatre is in excellent structural condition, having been well maintained over the years. It is not unsightly, unsafe, or unsanitary.

6. The H. G. Hill Realty Company building is a brick building, which was extensively remodeled in the past few years, and is a sound, substantial structure throughout. It is not unsightly, unsafe, or unsanitary.

7. Tennessee law requires that a Redevelopment Plan be " * * * sufficiently complete * * * (2) To indicate proposed land uses and building requirements in the area". Supplement to Code of Tennessee 1950, Sec. 3727.29P, Tenn.Code Annotated, Sec. 13–815. The Redevelopment Plan, however, designates no specific land uses for Area A, in which is located the city block hereinbefore described, except that no residential or industrial buildings may be located therein. The Plan provides that the "only permitted uses" shall be for "office and professional buildings, retail and department stores, banks, theaters, restaurants, club houses, cultural and educational facilities, bus passenger facilities, telephone central stations, post offices, hotels and commercial apartment hotels, and other uses of a similar nature, as well as off-street parking and loading facilities (including parking garages, underground or within the buildings to which they are incidental)." (Redevelopment Plan, p. 12.) No building requirements in the area are indicated in the Plan.

8. The Plan states that Nashville Housing Authority "shall specifically reserve the right to review and approve the redeveloper's plans and specifications with respect to the use of the land, the location, height, bulk and land coverage of the proposed building or buildings to

be provided by the redeveloper, and with respect further to the provision of the off-street parking and off-street loading facilities". (Redevelopment Plan, p. 13.) However, the Plan itself gives no indication as to what the requirements will be in this respect.

9. Under date of September 26, 1952, Nashville Housing Authority entered into a contract with defendant, Housing and Home Finance Agency, whereby the latter agreed to make certain loans and grants to Nashville Housing Authority for carrying out the project. Sec. 201(3) of said contract provides that Nashville Housing Authority may not make any changes in the basic elements of the Redevelopment Plan "except with the prior written consent of the Government"; Sec. 201(6) provides that the Authority shall not acquire or contract to acquire any land in the project area at prices, or subject to covenants, restrictions, terms or conditions, "which shall not have been concurred in by the Administrator"; Sec. 201(7) provides "that the Authority shall not institute eminent domain proceedings without the concurrence of the Administrator"; Sec. 201(8) provides that no land shall be sold or leased at prices or upon or subject to covenants, restrictions, terms or conditions "which have not been concurred in by the Administrator".

10. About five weeks prior to September 22, 1953, the attorneys for plaintiffs Alfred Starr, et al., advised the attorneys for Nashville Housing Authority that if the Bijou Theatre were excluded from the redevelopment area, its owners would expend whatever sums might be necessary to make the building conform in appearance with other buildings to be constructed in the section of the redevelopment project area in which said Bijou Theatre was located. Having been informed that this proposition had been "taken under advisement", the plaintiff Alfred Starr wrote a formal letter, under date of September 22, 1953, to Nashville Housing Authority reiterating said proposition and giving reasons why such a course would be advantageous to both the Housing Authority and the plaintiffs. Copy of said letter was also sent the defendant, Housing and Home Finance Agency. The latter replied to Mr. Starr, through J. W. Follin, of the Division of Slum Clearance and Urban Development, that he felt confident that the local officials of Nashville Housing Authority would give due consideration to the letter. Mr. Starr received no reply at that time, or since, however, from Nashville Housing Authority. This suit was instituted on January 20, 1954. Mr. Starr testified that the commitment made in his letter of September 22, 1953, remains in effect. Defendants offered no evidence as to why no consideration was given to this proposal. Nashville Housing Authority gave no consideration to any plan for rehabilitation of any properties in the project Area.

11. At the time of the hearing of this cause, title to all property in the project area had been acquired by Nashville Housing Authority, with the exception of plaintiffs' properties. All buildings on Charlotte Avenue between Fourth Avenue and Fifth Avenue, with the exception of the building owned by the plaintiff H. G. Hill Realty Company, have been demolished, and all properties fronting on the west side of Fourth Avenue, North, between the Bijou Theatre and Charlotte Avenue have likewise been demolished. There are no dilapidated buildings remaining in Area A.

12. The Morris Memorial Building at the corner of Cedar Street and Fourth Avenue, North, is an office building, occupied by Negroes, which was built in 1924. The exteriors of the building on Cedar Street and Fourth Avenue, North, are of cut stone. The north and east sides of the building are of bare brick. A proposed new boulevard will run through the redevelopment area and said northern and eastern exposures of said building will be the ones visible from said boulevard. The Morris Memorial Building is not better maintained, is not more sound structurally, and is not more sanitary, safe or sightly, than the buildings of plaintiffs.

13. The property alleged in the complaint to be owned by plaintiffs H. G. Hill Realty Company and Alfred Starr, Milton Starr, and Michael Starr, individually and as Trustees of the Estate of Jacob Starr, and occupied by plaintiffs is in fact so owned and occupied and except for the present action would have been taken by the Nashville Housing Authority acting under the powers conferred upon it by Chapter 114, Public Acts of 1945, and Chapter 20, Public Acts of 1935, 1st Ex.Sess.

14. Pursuant to the provisions of Chapter 114, Public Acts of 1945, the Nashville Housing Authority adopted a Redevelopment Plan for the Capitol Hill Redevelopment Project by a resolution on April 7, 1952, submitted the same to the Planning Commission of the City of Nashville which approved same by resolution adopted April 7, 1952. The City Council of the City of Nashville on April 15, 1952, by resolution No. 52–461, provided for a public hearing to be held April 29, 1952, and for the publication of legal notice in the daily newspapers that such a hearing would be held. Said public hearing was held on April 29, 1952, affording opportunity for interested persons to present their views. Following the public hearing so held, the City Council by resolution No. 52–471 adopted April 29, 1952, found and determined that said Capitol Hill Redevelopment Area, including within its boundaries as part thereof the plaintiffs' properties, constituted a blighted area within the meaning of the statute and approved said Redevelopment Plan.

15. The City Council in said resolution further authorized the Nashville Housing Authority to apply for additional federal financial assistance for the carrying out of said Redevelopment Plan. Pursuant to said resolution, the Nashville Housing Authority entered into a loan and grant contract with the defendant, The Housing and Home Finance Agency, dated September 26, 1952, wherein the Government agrees to make to the defendant Nashville Housing Authority a capital grant to enable said defendant to make project land available for redevelopment at its fair value for uses in accordance with the Project Redevelopment Plan in the amount of $5,207,200, and the Government further agrees to make a Project Temporary Loan in an amount not to exceed the sum of $8,309,300. The City of Nashville as a local grant in aid issued $1,000,000 in bonds for the construction of boulevards, streets, sidewalks, alleys, and other improvements in said Capitol Hill Redevelopment Area. Since the filing of this lawsuit the defendant Nashville Housing Authority has acquired by deed the properties of the original plaintiffs W. E. Norvell, Jr., John W. Napier, James W. Napier, Jr., and the Trustees of the Masonic Temple, Inc., and by condemnation proceedings the properties of the plaintiffs Lou Lusky and wife, Billye Lusky. Besides the properties of the plaintiffs H. G. Hill Realty Company and Alfred, Milton, and Michael Starr, the only other parcels of land in said project not yet acquired are those of McEwen Laundry Company, Martha Lindsey, and St. John's African Methodist Episcopal Church, which have been condemned, but the right to take which is being contested by the owners in the State Court.

16. In the exercise of its discretion, the Nashville Housing Authority has determined that the properties of the plaintiffs in this action form an essential and integral part of said Capitol Hill Redevelopment Project and the acquisition thereof is necessary to the carrying out of the purposes of said Redevelopment Plan as adopted by the defendant Nashville Housing Authority and approved by the City Council. The area included in the Capitol Hill Redevelopment Project is a slum and blighted area within the meaning of Chapter 114 of the Public Acts of Tennessee for the year 1945 and said area is a slum area and a deteriorated or deteriorating area which is predominantly residential in character, within the meaning of Title I of the Housing Act of 1949, Public Law 171, 81st Congress, 42 U.S.C.A. § 1460.

Conclusions of Law

1. Chapter 114, Public Acts of 1945, and Chapter 20, Public Acts of 1935, 1st Ex.Sess., are constitutional enactments. Nashville Housing Authority v. City of Nashville, 192 Tenn. 103, 237 S.W.2d 946; Knoxville Housing Authority v. City of Knoxville, 174 Tenn. 76, 123 S.W.2d 1085; Berman v. Parker, 348 U. S. 26, 75 S.Ct. 98, 99 L.Ed. 27.

2. The determination of the area to be included in a redevelopment project is within the reasonable discretion of the legislative authorities and the courts will not oversee the choice of the boundary lines nor sit in review on the size of a particular project area. Once the question of the public purpose has been decided, the amount and character of the land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch of the government. Berman v. Parker, supra.

3. The defendant Nashville Housing Authority as a redevelopment agency must approach the problem of the blighted parts of the community on an area, rather than on a structure by structure, basis, and it is immaterial that some particular structure within such area may be safe, sound, and well kept. Berman v. Parker, supra.

4. The action of the defendants Nashville Housing Authority and City of Nashville in including the properties of the plaintiffs in said Project was not arbitrary, capricious, or an abuse of discretion.

5. The contract between the Nashville Housing Authority and the Housing and Home Finance Agency dated September 26, 1952, is legal as relating to plaintiffs' properties. Said contract is authorized by the Housing Act of 1949, 63 Stat. 413, 42 U.S.C.A. §§ 1451–1460, and does not delegate state power to the Federal Government in violation of the Tenth Amendment to the United States Constitution.