WORCESTER KNITTING REALTY CO. *vs.* WORCESTER HOUSING AUTHORITY & another.

Worcester.    September 25, 1956. — November 19, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Redevelopment of Land.    Public Officer.    Motive.    Eminent Domain,* Motive for taking.

A suit in equity to restrain action by a housing authority under the land redevelopment law with respect to a project the dominant purpose of which was slum clearance in a project area found by the authority to be substandard and decadent under that law could not be maintained on the ground that the inclusion in the project area of contiguous subareas on its peripheries allegedly nonresidential, nondecadent, and segregated from substandard or decadent properties was in bad faith, arbitrary, and for other than the statutory purposes, where findings of the authority supported a reasonable determination that the inclusion of such subareas as a part of the entire project area would advance desirable objectives and overall city planning. [22–24]

In a suit in equity to enjoin a housing authority from exercising its power to take land by eminent domain under the land redevelopment law for proper purposes thereunder, the motive impelling the members of the authority to exercise such power was not a relevant consideration. [24]

BILL IN EQUITY, filed in the Superior Court on June 24, 1954.

The plaintiff appealed from interlocutory decrees sustaining a demurrer and a plea and from a final decree dismissing the bill, entered by *Fairhurst, J.*

. *George H. Mason,* (*James A. Crotty & John P. Dunn* with him,) for the plaintiff.

*Lewis H. Weinstein,* (*Harry J. Meleski,* City Solicitor, & *Matthew R. McCann, Jr.,* with him,) for the defendants.

· WHITTEMORE, J. The plaintiff's bill of complaint seeks to restrain action under the land assembly and redevelopment plan instituted in 1953 by the Worcester Housing Authority under G. L. (Ter. Ed.) c. 121, §§ 26JJ–26MM (see St. 1946, c. 574, § 1; St. 1953, c. 647, §§ 18, 19), which was considered and upheld by this court in *Bowker* v. *Worcester,* 334 Mass. 422. In the Superior Court the demurrer and plea of the defendants to the amended bill of complaint were heard together and were sustained. The plaintiff seeks to prevail notwithstanding the holding of the *Bowker* case, and the recent cases therein referred to, for that, as the plaintiff contends, there are in the bill sufficient allegations of specific facts to show that there is a real issue to be tried of whether the requisite determinations by the public agencies involved were made in good faith for the purposes of the statute or were arbitrary and capricious. See *Stockus* v. *Boston Housing Authority,* 304 Mass. 507, 511. There was no error.

The plea avers that the record of administrative action shows the validity of the plan and is a ·bar. The parties stipulated that the record as pleaded is true.

The plaintiff attacks the finding of the Worcester Housing Authority that the project area is substandard and decadent within the meaning of those words in the statute. G. L. (Ter. Ed.) c. 121, § 26J (see St. 1946, c. 574, § 1; St. 1953, c. 647, § 11). The plaintiff seeks to overcome the apparent purpose of the plan, and our holding in the *Bowker* case (page 430) that, "on its face, [it] shows that its dominant purpose is slum clearance" with allegations which we summarize as follows: the project area includes contiguous, but separable, subareas which contain no residential property and are far removed from any buildings which could be called substandard or decadent; the status, character and uses of the buildings in the area are varied; any build-

ings which could be called substandard or decadent are few in number; a large number of the buildings are in good condition, well built and fully occupied, some are apartment houses commanding high rent; large parts of the area are used for parking lots; two integrated subareas separated from the residences in the project area by streets are included solely to improve the prospect of commercial development of the area by furnishing access from Main Street, the principal business street of the city of Worcester; and the avowed purposes of the housing authority have been other than the permitted statutory purpose, that is, the declared aims are to improve traffic, public transportation, parking, recreational and community facilities and assist in developing a traffic artery, to expand and redevelop commercial facilities and expand the trading area, to recreate and increase land values, bring about the construction of new and higher valued improvements and thereby to increase tax revenue, and help in the development of the entire city by redistribution of land uses. The bill specifies the areas which are allegedly improperly included, and describes the buildings and the use of the land therein.

The underlying determinations of the authority are such that, viewing the project area as a whole, it cannot be said that it was arbitrary or capricious to find, based on them, that it is a substandard or substandard and decadent area, within the statutory definitions,[1] or that the making of such findings suggests bad faith. *Bowker* v. *Worcester*, 334 Mass. 422.

---

[1] The statute, G. L. (Ter. Ed.) c. 121, § 26J (see St. 1946, c. 574, § 1; St. 1953, c. 647, § 11), defines substandard area as "any area wherein dwellings predominate which, by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation, light or sanitation facilities, or any combination of these factors, are detrimental to safety, health or morals," and defines "Decadent area" as "any area which is detrimental to safety, health, morals, or welfare because of the existence of buildings which are out of repair, physically deteriorated, unfit for human habitation, or obsolete, or in need of major maintenance or repair, or because much of the real estate in recent years has been sold or taken for non-payment of taxes or upon foreclosure of mortgages, or because many buildings have been torn down and not replaced and in which under existing conditions it is improbable that the buildings will be replaced, or because of a substantial change in business or economic conditions, or because of inadequate light, air, or open space or excessive land coverage; or by reason of any combination of any of the foregoing conditions."

Nor could it be held on the record and all the facts alleged by the plaintiff that the inclusion in the area of the allegedly nonresidential, nondecadent, segregated subareas, so that it might be considered as a whole, is evidence of bad faith or capricious or arbitrary action. We are not concerned with the significance of these allegations if they were coupled with such an averment of actual bad faith as was suggested by way of illustration in *Despatchers' Cafe Inc.* v. *Somerville Housing Authority*, 332 Mass. 259, 263–264. The summary assertions of bad faith and arbitrary and capricious action add nothing to the bill. *Stockus* v. *Boston Housing Authority*, 304 Mass. 507, 511. The determination of the boundaries of the area is for the administrative agencies and may not be retried in the courts. *Bowker* v. *Worcester*, 334 Mass. 422, 434, and cases cited.

The declared purposes of the statute would in many cases be thwarted if the authority must exclude from the redevelopment every adjacent parcel to which, considered by itself, the statutory definitions may not apply. This consideration is as important as applied to the peripheries as for the center of a project area. Otherwise in many cases the new development could not be so related to the adjacent parts of the municipality and its overall planning as to give any chance of success to the statutory plan to rehabilitate and rebuild the substandard area. The statutory purpose is to rehabilitate and rebuild "for residential, governmental, recreational, business, commercial, industrial or other purposes, including the provision of streets, parks, recreational areas and other open spaces" (G. L. [Ter. Ed.] c. 121, § 26JJ, as appearing in St. 1953, c. 647, § 18).

Access to Main Street was manifestly an important and relevant consideration. So was the provision for a wide new Salem Street to parallel Main Street and join the Worcester Common at Salem Square. The subareas included for these purposes were geographically contiguous, and not far removed from residential buildings. The authority found, "Because of the inappropriateness of the Project Area for residential use, rehabilitation of residential structures would

have no lasting effects. As Worcester developed over the years, land on the peripheries of the Project Area was devoted almost entirely to commercial and industrial uses, and these uses increased within the Project Area itself. As nonresidential uses in and around the area increased and as transportation facilities were developed which made outlying residential areas more accessible to the downtown business area, the utility of land in the Project Area for residential purposes diminished sharply." "These traffic problems, which create a serious safety hazard, are particularly acute within the Project Area, in that (a) the Project Area lies directly in the path of the proposed Salem Street-Union Street parallel artery to Main Street and acts as an impassable barrier to the creation of any such throughway, (b) the Project Area contains too many streets for its total land area resulting in too many intersections which impede traffic flow, (c) the streets in the Project Area are too narrow and too congested for expeditious traffic movement, (d) such streets do not intersect squarely with streets outside the area, resulting in constant traffic jams at intersections, (e) the topography in the Project Area is hilly with the result that driving visibility is lessened, wintertime passage is made difficult, and off-street development is confronted with problems of adjusting grade."

As these and the other full and detailed findings demonstrate affirmatively a basis for the reasonable determination that the substandard or substandard and decadent area is inclusive of the areas which the plaintiff particularly specifies there is nothing in the bill to sustain the case. Manifestly it cannot be controlling that there are buildings and land within the area not of the dominant character which is controlling. We have adverted to specific findings, not to review them, which we may not do, but to show that this case is not, as the plaintiff claims, analogous to one where what has been done speaks for itself to show action outside the statutory purpose.

The full specifications by the authority of those desirable things which will be accomplished by the plan, other than

rehabilitation and redevelopment of the project area itself, are proper to show that it is consonant with and will advance the overall city planning which the statute expressly contemplates and are statements of reasons why the plan is deemed a good one to rehabilitate the particular area. These findings do not tend to show nonstatutory purposes. Motive of the members of the authority is not a relevant consideration. *Despatchers' Cafe Inc.* v. *Somerville Housing Authority*, 332 Mass. 259.

No constitutional questions are involved whether the statute is given a wide or close construction. *Papadinis* v. *Somerville*, 331 Mass. 627. *Berman* v. *Parker*, 348 U. S. 26. The improvement of the appearance and attractiveness of a project area is a valid public purpose. *Berman* v. *Parker*, ibid. *Bowker* v. *Worcester*, 334 Mass. 422, 430.

> *Interlocutory decrees sustaining the plea and demurrer and final decree affirmed.*