115 So.2d 459

**R. J. BLANKENSHIP et al.**

v.

**CITY OF DECATUR et al.**

8 Div. 984.

Supreme Court of Alabama.

Nov. 5, 1959.

Calvin, Gilchrist & Murphree, Decatur, for appellants.

Peach, Caddell & Shanks, John A. Caddell, Britnell & McEntire, Ben L. Britnell, Decatur, for appellees.

**672**

White, Bradley, Arant, All & Rose, Wm. Alfred Rose and Robt. R. Reid, Jr., Birmingham, amici curiae.

MERRILL, Justice.

Appellants, property owners and taxpayers in the City of Decatur, filed a bill in equity seeking a declaratory judgment and an injunction against appellees, City of Decatur and Housing Authority of the City of Decatur, enjoining the appellees from carrying out a redevelopment and urban renewal plan known and designated as the "Well Street Urban Renewal Project."

Appellants contend that the redevelopment projects Act, Act 491, General Acts of Alabama, 1949, p. 713, and the urban renewal projects Act, Act 553, General Acts of Alabama 1955, p. 1210, which are listed as Tit. 25, Chaps. 10 and 11, §§ 96–112, Cumulative Pocket Part, Code 1940, do not authorize a redevelopment project in which all of the property acquired is to be resold to private individuals; that the statutes are unconstitutional and that appellees acted arbitrarily, unreasonably or capriciously in carrying out and approving said project.

The appellees defended on the grounds that the statutes do authorize redevelopment projects in which all of the property is to be resold to private individuals; that the statutes in question are constitutional and that the actions of appellees were not arbitrary, unreasonable or capricious.

The trial court denied all the relief sought after a full hearing and this appeal is from the final decree of the circuit court, in equity.

On January 16, 1956, the City Council of the City of Decatur adopted a resolution declaring that the Well Street area was a slum, blighted, deteriorated or deteriorating area appropriate for an urban renewal project and approving the undertaking by the Housing Authority of the City of Decatur of surveys and plans for an urban renewal project in that area. After various proceedings, the urban renewal plan was presented to the City Council by the Housing Authority at the meeting of the City Council on July 1, 1958, was taken under consideration and held over until the meeting of July 15, 1958, and finally, on August 5, 1958, a resolution was adopted, finding that the project was a slum and blighted area and qualified as an eligible project area under Tit. 25, Code 1940, as amended, and that the urban renewal plan for the project had been duly reviewed and considered. During all of that period from January 16, 1956, until the adoption of the resolution approving the plan on August 5, 1958, none of the appellants made any proposal or effort to rehabilitate the area by voluntary action. On August 5, 1958, a proposal was made requesting a further delay of six months, which proposal was rejected by the City Council.

The area statistics for the property to be cleared, as shown in Part 1 in the application for loan and grant, being the appellees' Exhibit No. 5, are as follows:

| | |
|---|---|
| Total area | 16.71 acres |
| Improved land | 15.70 acres |
| Unimproved land | 1.01 acres |
| Residence structures | 62 |
| Substandard residential structures | 48 |
| Commercial structures | 8 |
| Substandard | 5 |
| Occupied housing units | 64 |
| Substandard | 53 |
| Standard | 11 |
| Occupied by white | 12 |
| Substandard | 4 |
| Standard | 8 |
| Occupied by non-white | 52 |
| Substandard | 49 |
| Standard | 3 |

Appellants state in brief as follows:

"The essential question to be answered is do Sections 96 through 112, Title 25, grant to the appellees the right to exercise the power of eminent domain to condemn privately owned property *all* of which is to be sold or leased to private individuals *solely* for business and commercial purposes."

This question is answered in the negative in the cases of Adams v. Housing Authority of City of Daytona Beach, Fla., 60 So.2d 663; Edens v. City of Columbia, 228 S.C. 563, 91 S.E.2d 280; and Housing Authority of City of Atlanta v. Johnson, 209 Ga. 560, 74 S.E.2d 891, and fully support appellants' contention that the redevelopment and urban renewal project as undertaken under the applicable statutes was unconstitutional.

We note in passing that following the decision in the last cited case, the Constitution of the State of Georgia was amended and new legislation was upheld in Bailey v. Housing Authority of City of Bainbridge, 214 Ga. 790, 107 S.E.2d 812.

The pertinent part of § 23 of the Constitution reads:

"That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; * * *."

We have said that the "public use" as used in § 23 should be given an elastic or liberal meaning, and that "the great weight of authority holds that the result and purpose to be accomplished under the act in question was for a public use." Brammer v. Housing Authority of Birmingham Dist., 239 Ala. 280, 195 So. 256, 258. That case was concerned with the validity of the act which later was codified as Tit. 25, §§ 5–30, Code 1940, where similar questions to those now before us were raised.

Later, in Opinion of the Justices, 254 Ala. 343, 48 So.2d 757, 760, rendered October 25, 1950, in considering Act 491, General Acts of Alabama 1949, p. 713, now listed in the Cumulative Pocket Part as Tit. 25, §§ 96–104, this court, including four present members, followed the Brammer case and said:

"The theory that Act No. 491 does not violate constitutional restrictions such as section 23, supra, has been approved by decisions of many courts construing such an act as this, holding that the exercise of the police power in clearing a blighted area, such as is described in the Alabama law, supra, is a public use of that area. Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A.2d 277, 172 A.L.R. 953; Schenck v. City of Pittsburg, 364 Pa. 31, 70 A.2d 612; Zurn v. City of Chicago, 389 Ill. 114, 59 N.E.2d 18; People ex rel. Tuohy v. City of Chicago, 399 Ill. 551, 78 N.E.2d 285; Redfern v. Board of Commissioners of Jersey City, 137 N.J.L. 356, 59 A.2d 641; In re Opinion to the Governor, 76 R.I. 249, 69 A.2d 531; General Development Corp. v. City of Detroit, 322 Mich. 495, 33 N.W.2d 919; Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489; Amalgamated Housing Corp. v. Kelly, 193 Misc. 961, 82 N.Y. S.2d 577. See, also, 172 A.L.R. notes 967, 970 et seq.

"Our conclusion is that the plan contemplated by Act No. 491, supra,

in connection with Title 25, Code, shows that character of public benefit resulting from its observance which should be classified as a public use on the same theory which influenced us in so declaring with reference to Title 25, supra, before the adoption of the Act No. 491, supra, and does not violate section 23 of the Constitution."

A later annotation appears in 44 A.L.R.2d 1414 et seq.

At that time, the cases relied on by appellants had not been decided, nor had the following cases from additional jurisdictions been decided, all of which support the position taken by this court in the Brammer case, 239 Ala. 280, 195 So. 256, and Opinion of the Justices, 254 Ala. 343, 48 So.2d 757; Rowe v. Housing Authority of City of Little Rock, 220 Ark. 698, 249 S.W.2d 551; Babcock v. Community Redevelopment Agency of City of Los Angeles, 148 Cal.App.2d 38, 306 P.2d 513; Gohld Realty Co. v. City of Hartford, 141 Conn. 135, 104 A.2d 365; Randolph v. Wilmington Housing Authority, Del., 139 A.2d 476; Alanel Corp. v. Indianapolis Redevelopment Commission, Ind., 154 N.E.2d 515; State ex rel. Fatzer v. Urban Renewal Agency, 179 Kan. 435, 296 P.2d 656; Miller v. City of Louisville, Ky., 321 S.W.2d 237; Herzinger v. Mayor & City Council of Baltimore, 203 Md. 49, 96 A.2d 3, 98 A.2d 87; Worcester Knitting Realty Co. v. Worcester Housing Authority, 335 Mass. 19, 138 N.E. 2d 356; Housing and Redevelopment Authority of City of St. Paul v. Greenman, Minn., 96 N.W.2d 673; Velishka v. City of Nashua, 99 N.H. 161, 106 A.2d 571, 44 A.L.R.2d 1406; State ex rel. Bruestle v. Rich, 159 Ohio St. 13, 110 N.E.2d 778; Nashville Housing Authority v. City of Nashville, 192 Tenn. 103, 237 S.W.2d 946; Starr v. Nashville Housing Authority, D. C., 145 F.Supp. 498, affirmed 354 U.S. 916, 77 S.Ct. 1378, 1 L.Ed.2d 1432; Hunter v. Norfolk Redevelopment and Housing Authority, 195 Va. 326, 78 S.E.2d 893;

David Jeffrey Co. v. City of Milwaukee, 267 Wis. 559, 66 N.W.2d 362.

While it is true that Act 553, listed in the Pocket Part as Tit. 25, §§ 105–112, had not been enacted when the Opinion of the Justices, 254 Ala. 343, 48 So.2d 757, was rendered, there is nothing in Act 553 which would affect the opinion rendered on Act 491. The instant proceedings, regardless of name, are much more concerned with a redevelopment project (Act 491) than with an urban renewal project (Act 553).

■ There is no new or different question here presented. We are faced with a choice of adopting a minority view, not without appealing argument, or of following a carefully considered opinion of the members of this court which is part of the majority opinion consisting of at least twenty-six States. We choose to follow our previous opinion and hold that Acts 491 and 553, listed as Tit. 25, §§ 96–112, Code 1940, Pocket Part, authorize the redevelopment project sought by appellees, and the statutes do not violate § 23 of the Constitution.

Appellants also argue that the action of appellees was arbitrary, unreasonable or capricious for including some properties which are not substandard, for including some fringe areas, and in not permitting the property owners six months in which to improve or remove the present buildings on the property.

In Brammer v. Housing Authority of Birmingham Dist., 239 Ala. 280, 195 So. 256, 258, we said:

"The acts involved gave the Housing Board or Authority the power to select the locus in quo and in the absence of a charge that their action was arbitrary, capricious or fraudulent their action will not be disturbed. Stockus v. Boston Housing Authority, supra [304 Mass. 507, 24 N.E.2d 333]; Leary

v. Adams, 226 Ala. 472, 147 So. 391. Moreover, it seems well settled that the action of a governmental agency acting within its authority will not be controlled or revised by injunction. Goodwin v. State Board of Administration, 212 Ala. 453, 102 So. 718; High on Injunctions, Sections 1308–11; Lehmann v. State Board of Public Accountancy, 208 Ala. 185, 94 So. 94."

The evidence shows that the plans of the Housing Authority were approved by the City Council after much and lengthy consideration. In Alosi v. Jones, 234 Ala. 391, 174 So. 774, 776, this court said:

"The city authorities, the governing body chosen for the purpose, with full opportunity to ascertain the facts, are charged with the responsibility of determining the propriety of measures within the scope of their police powers. The courts cannot invade this field. To do so is to enter the field of law making.

"Hence, the rule that the burden is on the party assailing the city ordinance to show by clear and convincing evidence that there has been such arbitrary, unreasonable, oppressive action as to constitute a clear abuse of power, tantamount to action outside the police power. It is often stated that if, under all the conditions, reasonable men may differ as to the occasion for such action, the same will not be disturbed. (Citing cases)."

The trial court heard and saw the witnesses and had all the maps and documents before him and reached the conclusion that "the respondents have not been guilty of arbitrary or unreasonable actions in the steps taken pursuant to those statutes in furtherance of the Project plans but their actions are valid and authorized by and in compliance with those statutes."

■ There was evidence to support this finding, both as to area and as to the denial of the six months extension, since it came at such a late date, August 5, 1958, when the final resolution was adopted.

■ From the pictures of each structure in the area which are in evidence, and testimony in the record, there is no question but that most of the territory is a slum area. In Mumpower v. Housing Authority of City of Bristol, 176 Va. 426, 11 S.E.2d 732, 735, it was said:

"It is a matter of common knowledge that slum areas where many people gather under the lowest possible standards of living, crowded together in dilapidated hovels which are unsafe, unsanitary and unhealthful, in a sordid atmosphere, are the places where is bred, nurtured, and brought to its destructive fruition the greater percentage of crime and moral degeneracy; likewise, that such are the breeding places from which disease is spread; and, worst of all, such places are self-perpetuating in that offsprings born under such conditions are damned, from the day of their arrival in this world, to the life of their fathers. Such gathering places of filth, lust, crime, disease and degeneracy are a tragic detriment, not only to their inhabitants, but are in every respect a social and economic detriment to the people at large. Their eradication is a matter of vital concern to the public and to the State. That the existence of such situations is detrimental to the health, safety, morals, general welfare and general prosperity of the people is so clear as not to require any reasoning."

And the mere fact that some of the buildings in the area are standard and substantial does not require that they be omitted from the operation of the project. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27; Starr v. Nashville Hous-

ing Authority, D.C., 145 F.Supp. 498, affirmed 354 U.S. 916, 77 S.Ct. 1378, 1 L.Ed.2d 1432; Kaskel v. Impellitteri, 306 N.Y. 73, 115 N.E.2d 659, certiorari denied 347 U.S. 934, 74 S.Ct. 629, 98 L.Ed. 1085; Gohld Realty Co. v. City of Hartford, 141 Conn. 135, 104 A.2d 365; Herzinger v. Mayor & City Council of Baltimore, 203 Md. 49, 96 A.2d 3, 98 A.2d 87; State on Information of Dalton v. Land Clearance for Redevelopment Authority of Kansas City, 364 Mo. 974, 270 S.W.2d 44; Foeller v. Housing Authority of Portland, 198 Or. 205, 256 P.2d 752; Babcock v. Community Redevelopment Agency, 148 Cal.App.2d 38, 306 P.2d 513; Velishka v. City of Nashua, 99 N.H. 161, 106 A.2d 571, 44 A.L.R.2d 1406; Hunter v. Norfolk Redevelopment and Housing Authority, 195 Va. 326, 78 S.E.2d 893; State ex rel. Bruestle v. Rich, 159 Ohio St. 13, 110 N.E.2d 778; Worcester Knitting Realty Co. v. Worcester Housing Authority, 335 Mass. 19, 138 N.E.2d 356, 358. In the last cited case, the court said:

"The declared purposes of the statute would in many cases be thwarted if the authority must exclude from the redevelopment every adjacent parcel to which, considered by itself, the statutory definitions (of blight) may not apply. This consideration is as important as applied to the peripheries as for the center of a project area. Otherwise in many cases the new development could not be so related to the adjacent parts of the municipality and overall planning as to give any chance of success to the statutory plan to rehabilitate and rebuild the substandard area."

The decree of the circuit court is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.